The STATE of Ohio, Appellee,

v.

MOORE, Appellant.

[Cite as *State v. Moore* (1994), 97 Ohio App.3d 137.]

Court of Appeals of Ohio,
Lake County.

No. 92–L–092.

Decided June 3, 1994.

*Steven C. LaTourette,* Lake County Prosecuting Attorney, *Ariana E. Tarighati* and *Kimberly A. Mahaney,* Assistant Prosecuting Attorneys, for appellee.

*Albert L. Purola,* for appellant.

NADER, Judge.

This is an appeal from a judgment of the Lake County Court of Common Pleas entered upon the jury verdict finding appellant, Robert Moore, guilty of attempted murder in violation of R.C. 2903.02 and felonious assault in violation of R.C. 2903.11, together with firearm specifications. The case arises from an incident occurring on April 7, 1991, wherein appellant shot his neighbor, Patrick Dial, in the neck.

In August 1990, Patrick Dial and his wife purchased the home next to appellant's in the community of Mentor-on-the-Lake. At this time, appellant was seventy-three years of age, and had resided at the same residence with his wife for over forty years. Patrick Dial, age thirty-six, had to conduct certain repairs before he and his family could move into their new home.

During the period when these repairs were being conducted, appellant and Dial became engaged in a heated argument concerning an old motor head, and, specifically, upon whose yard the item belonged. The evidence shows that, during the course of this dispute, Dial issued verbal threats and made several aggressive motions toward appellant. Although Dial never crossed the property line, he was informed by appellant that, if he ever did so, appellant would shoot him. The two had no further contact until the date of the shooting.

On this date, the Dials invited Victoria LeVetsky and Huntis McFarren to their new home for a barbecue. Most of the day passed uneventfully. However, as evening approached, another confrontation between the neighbors took place, eventuating in Patrick Dial being shot in the neck and suffering paralysis of the face, and appellant and his wife experiencing heart attacks, requiring both to undergo bypass surgery.

As the accounts of this incident differ significantly, both will be summarized separately. First, however, it is necessary to briefly detail the scene of the incident. The driveways of the two properties run next to each other, separated only by a strip of dirt, grass, and shrubbery a few feet in width. On April 7, 1991, appellant's motorhome was parked on his driveway between the house and the street. Dial's van was parked on his own driveway and across from the motorhome. Thus, the van and motorhome were located several feet in distance from each other.

Patrick Dial and Victoria LeVetsky testified at trial as to the following events leading up to the shooting. They and Huntis McFarren were sitting beside the Dial home when appellant was heard yelling at Dial's children to get off his yard, threatening to shoot them. Dial and LeVetsky quickly went toward the front of the Dial property, between the motorhome and van. Dial yelled and swore at appellant, stating that if appellant had a problem with him, appellant should deal with him directly and leave the children alone. Appellant responded by saying, "Fuck you. I'll shoot you." Dial said, "Go get your gun." Appellant then turned and walked back to his house. While Dial was getting the children back into his yard, LeVetsky observed appellant through his livingroom window carrying a gun and walking toward the side door of the house where he had just entered. She attempted to warn Dial. Appellant came around the corner of the motorhome, and as Dial turned to face him, appellant raised the gun in the direction of Dial's face and shot. Dial fell against the van. Appellant stated, "How do you like that?"

Appellant testified as follows. He observed Dial's son, Adam, in his yard and, worried that Adam might hurt himself, walked outside his door and yelled for Adam to go back to his own yard. He heard Dial begin to swear and yell threats directed toward appellant. Appellant walked toward the front of his property, and as he passed the front of the motorhome he found Dial on his property, leaning against the front of the motorhome. Dial's teeth were bared and his fists were clenched, causing appellant to believe "He was goin' kill me." Appellant turned and walked back to the house as fast as he was able, went into the bedroom and retrieved a gun, and returned to the side door. Although he could not see Dial from this vantage point, appellant "believed he was on the fender of my car [motorhome], or close to it, because I could hear him." Wanting "to see what he was doing," appellant walked back to the front of the motorhome. At this point, appellant observed Dial on Dial's property by the van. LeVetsky was trying to pull Dial back to his own house, but when he saw appellant, Dial pushed her away and lunged at appellant. Experiencing chest pains and shortness of breath throughout this encounter, appellant felt an acute chest pain at this moment, staggered backwards, and the gun accidentally fired.

The evidence produced at trial showed that the distance from the place of the shooting and the side entrance of appellant's house was over twenty feet. The only blood located by the police was situated on Dial's property, next to the van. The bullet which passed through Dial's neck was never found. No one else observed the actual shooting.

On January 31, 1992, appellant was indicted on one count of attempted murder and one count of felonious assault, each count including a firearm specification. On February 3, 1992, appellant pled not guilty to the charges. A six-day jury trial was held from May 18, 1992 to May 26, 1992. Appellant asserted accident and self-defense at trial as alternative defenses. The defense also presented fourteen character witnesses unrelated to appellant who testified as to appellant's truthful and peaceful nature.

Following deliberations, appellant was found guilty of both counts and specifications. Judgment was entered upon the verdict by entry dated May 29, 1992. A motion for new trial was filed on June 5, 1992. An oral hearing on the motion was held on June 16, 1992. On June 17, 1992, the motion was overruled. Also on this date, the trial court entered its sentencing order. Count 2, felonious assault, was merged into Count 1 as an allied offense of similar import. On Count 1, appellant was sentenced to four to twenty-five years, to be preceded by three years of actual incarceration on the firearm specification. By order of this court, appellant's sentence was stayed pending appeal.

Appellant presents seven assignments of error:

"1. Robert Moore was denied a fair trial by the prosecutor's improper argument to the jury and the trial court's failure to give a curative instruction.

"2. Robert Moore was denied a fair trial by the final argument of the prosecuting attorney in three material ways: His uncorrected argument regarding Robert Moore's duty to retreat to his house; his statement that Mr. Moore and his lawyer 'manufactured' evidence and a defense; and his statement to the jury that they would be committing a crime if they considered certain things.

"3. The trial court erred to the prejudice of Robert Moore by not admitting defendant's exhibit 'I' into evidence.

"4. The trial court erred in refusing to allow witness Katie Moore to testify regarding the episode with Patrick Dial and threat made to her.

"5. The evidence is constitutionally insufficient to support the verdict in two ways: (1) the circumstantial evidence on the element of intent to kill (or knowingly cause physical harm) is not inconsistent with one or more reasonable theories of innocence, and (2) considering the evidence of self-defense, a rationale [sic] juror could not have found guilt beyond a reasonable doubt, and accordingly

the motions for judgment of acquittal under Criminal Rule 29 should have been granted.

"6. The trial court erred in overruling the motion for a new trial.

"7. The requirement in Ohio that the defendant carry the burden of persuasion on the affirmative defense of self-defense violates the Fourteenth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution."

In his first assignment of error, appellant argues that a reversal of the conviction is warranted on the basis of an improper closing argument by the prosecutor made to the jury during rebuttal.

In order to establish self-defense, a defendant must show: (1) that he was not at fault in giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from danger was the use of such force, and (3) that he did not violate any duty to retreat or avoid the danger. *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755. The trial court properly instructed the jury upon this defense. See 4 Ohio Jury Instructions (1993), Section 411.31.

The trial court, however, rejected the proposed "trouble maker" instruction requested by the prosecutor. This instruction reads:

"A defendant is not in a position to claim self-defense if he sought trouble and (armed with a dangerous weapon), he provoked a fight (or renewed a fight that had broken off) and did not attempt to avoid it or leave the scene of the trouble." 4 Ohio Jury Instructions (1993), Section 411.35(2) at 79.

Despite this ruling by the trial court, the prosecutor argued to the jury in closing argument that one loses the claim of self-defense when, after reaching a place of safety, that person returns to the scene of the confrontation with a gun.

In order to reverse a conviction due to prosecutorial misconduct during closing arguments, a defendant must establish that the remarks were improper and that they prejudicially affected the defendant's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. In making a determination of whether the remarks were prejudicial, an appellate court must consider all relevant factors, including: (1) the nature of the closing remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant. *State v. Clark* (1974), 40 Ohio App.2d 365, 69 O.O.2d 324, 319 N.E.2d 605; *State v. Owens* (Nov. 9, 1990), Lake App. No. 89–L–14–047, unreported, at 4, 1990 WL 174128.

■ The state is correct in its assertion that defense counsel voluntarily withdrew an objection to the argument. However, the transcript reflects that defense counsel made an earlier objection to the line of argument when it was first raised. The trial court overruled the objection and no corrective instruction was given. Defense counsel was justified in assuming that any further objection to this line of argument would be overruled.

■ While the state's argument was improper in view of the trial court's previous ruling upon the trouble maker instruction, we find that appellant was not prejudiced as the facts developed at trial warranted the instruction.

In August 1990, appellant threatened to shoot Dial. He did just that during their next confrontation. According to the testimony of Dial and LeVetsky, appellant announced his intent to shoot Dial, went into the house, picked up a gun, returned to the same location, raised the gun towards Dial's face, and fired the gun. According to appellant's testimony, although he was placed in fear for his life, he returned to the site of the initial confrontation with a gun, reasonably certain that Dial remained there by reason of hearing the sound of Dial's voice.

Thus, upon either version of the facts, the jury could find that appellant, seeking trouble, and after leaving the scene, returned with a dangerous weapon and renewed the confrontation.

■ Appellant contends that instruction was unavailable because he had no obligation to retreat to and remain in his house. The Supreme Court of Ohio has stated:

"In most circumstances, a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation. * * * However, '[w]here one is assaulted in his home, or the home itself is attacked, he may use such means as are *necessary* to repel the assailant from the house, or to prevent his forcible entry, or material injury to his home, even to the taking of life.' *State v. Peacock* (1883), 40 Ohio St. 333, 334. Implicit in this statement of law is the rule that there is no duty to retreat from one's home." (Emphasis *sic.*) (Citations omitted.) *State v. Williford* (1990), 49 Ohio St.3d 247, 250, 551 N.E.2d 1279, 1282.

In the case *sub judice*, appellant was not attacked in his home, nor was his home being attacked. While Dial may have been a few feet over the property line near the front of appellant's driveway at the time of the initial encounter, the rule in *Peacock* does not extend this far. *Cleveland v. Hill* (1989), 63 Ohio App.3d 194, 199, 578 N.E.2d 509, 511–512. See, also, *Williford, supra* (front porch); *State v. Jackson* (1986) 22 Ohio St.3d 281, 22 OBR 452, 490 N.E.2d 893 (porch stairs); *State v. Reid* (1965), 3 Ohio App.2d 215, 221, 32 O.O.2d 316, 319, 210 N.E.2d 142, 147 ("standing upon his own doorstep").

Accordingly, as the statements made by the prosecutor in closing arguments were warranted by the facts and the law, appellant was not deprived of a fair trial. *State v. Keenan* (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203, 206–207. Appellant's first assignment of error is without merit.

In his second assignment of error, appellant presents two additional comments by the prosecutor during rebuttal of closing argument which he contends deprived him of a fair trial.

█ The first comment insinuated that appellant asserted in bad faith his defense of accident, *i.e.*, that the gun misfired. The prosecutor stated:

"And what do we have? What we have after this when he gets together with his lawyer, they dust off the law books, he says, hey, wait a minute, there's a problem with that self-defense."

Defense counsel's objection to this comment was overruled. The prosecution then reviewed the evidence discrediting appellant's position that the gun misfired.

█ We agree with appellant that the prosecution's statement was improper. It is improper for an attorney to go beyond the evidence in closing argument and express personal belief or opinion as to the credibility of a witness or the guilt of the accused. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318–319, 470 N.E.2d 883, 885. We disagree, however, with appellant's characterization of the comment that defense counsel was accused of manufacturing evidence. The issue remains whether the improper comment prejudicially affected the substantial rights of appellant. *Id.* We hold that it did not.

Richard Kent, of the Lake County Regional Forensic Laboratory, testified at trial, as an expert witness for the state, that the gun, fired at Dial by appellant, was incapable of misfiring, *i.e.*, that in order for the gun to fire, the hammer first had to be pulled all the way back, and then the trigger pulled. On cross-examination, counsel for the defense elicited testimony from the witness that his opinion was based on twenty-five tests in which the hammer was pulled back to a point just prior to the first sear engagement, and then released. Kent admitted on cross-examination that these tests were performed only after the defense brought to him another gun of identical caliber and made by the same manufacturer, which did misfire when tested by him. On re-direct, however, Kent reaffirmed his conclusion that the gun at issue was incapable of misfiring, explaining that the guns were dissimilar and the ability of the one gun to misfire had absolutely no bearing upon the characteristics of the gun used by appellant on April 7, 1991. The defense did not offer its own expert witness.

In view of this overwhelming evidence, this court holds that it is clear beyond a reasonable doubt that, absent the prosecutor's comment concerning the defense

of accident, the jury would still have found appellant guilty. *Smith,* 14 Ohio St.3d at 15, 14 OBR at 319, 470 N.E.2d at 885–886.

■ The second comment identified by appellant reads as follows:

"MR. LaTOURETTE: Again folks, we talked during voir die [*sic* ] about the fact that there may be some laws, some situations that you find yourself in that you may not like, you may not like what you have to do in this case, you may not in reaching the conclusion that is dictated by the facts and the law in this case, but, if you make a decision, if you make a judgment in this case that is based on anything else but the instructions of law given to you by the Judge and the facts as you found them, if you make a judgment in this case based upon the fact that the Defendant is 75, that he is in bad health, that let's give him a break, then you have violated your oaths, and you have committed a crime just as the Defendant has committed a crime.

"MR. PUROLA: I object to that.

"THE COURT: Sustained."

The final statement by the prosecutor asserting the potential commission of a crime by the jury was improper, but taken in context, this isolated statement was not prejudicial. The prosecutor entreated the jury to reach a verdict upon the facts and law of the case, and not upon sympathy or other emotion. This was entirely proper, and in direct opposition to the arguments at issue in the cases cited by appellant. See *State v. Davis* (1978), 60 Ohio App.2d 355, 362, 14 O.O.3d 315, 319, 397 N.E.2d 1215, 1220; *State v. Agner* (1972), 30 Ohio App.2d 96, 104, 59 O.O.2d 208, 212–213, 283 N.E.2d 443, 449. See, also, *State v. Keenan* (1993), 66 Ohio St.3d 402, 407, 613 N.E.2d 203, 207–208.

For the foregoing reasons, appellant's second assignment of error is without merit.

■ Appellant's third assignment claims error in the trial court's refusal to admit as an exhibit the second gun, also owned by appellant, which tests proved was capable of misfiring. As previously discussed, the trial court did permit substantial cross-examination with respect to defense Exhibit I, but did not permit it to be observed by the jury.

"It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. See *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, 1385.

Furthermore, with respect to the similarity or dissimilarity of the two guns put at issue by appellant, it has been held that "the trial court has discretion to determine whether other events or objects are sufficiently similar to contested events or objects that evidence about them has probative value. *Leichtamer v. American Motors Corp.* (1981), 67 Ohio St.2d 456, 473, 21 O.O.3d 285, 296, 424 N.E.2d 568, 580. If so, that circumstantial evidence may aid in the resolution of disputed matters. If not, it has no relevance, or 'its probative value is substantially outweighed by the danger of unfair prejudice.' See Evid.R. 403(A)." *Babb v. Ford Motor Co.* (1987), 41 Ohio App.3d 174, 177, 535 N.E.2d 676, 680.

Kent, the only expert to testify in the case, indicated that he could not deduce anything about the gun used in the shooting from examining and testing the defense's proposed exhibit. Moreover, the trial court found the two guns to be dissimilar.

We conclude that the trial court did not abuse its discretion in excluding defense Exhibit I. Thus, appellant's third assignment of error lacks merit.

In his fourth assignment of error, appellant asserts that the trial court erred in refusing to permit appellant's daughter to testify as to a verbal threat alleged to have been made to her by Patrick Dial.

On cross-examination of Patrick Dial, the following exchange occurred:

"A. Well, she had her hands in our mailbox.

"Q. Did you confront her at that time?

"A. Well, by the time I got out there I said, 'Hey get out of here,' she was already running into the house and that was the extent of it.

"Q. Is that all?

"A. Yeap, she said no words back to her [*sic* ], I said no more to her.

"Q. What you said, Mr. Dial, was get off my property or I'll rip your head off and skull fuck you, isn't it?

"A. No, sir. You're highly incorrect."

Appellant's daughter later testified as to this event, and stated that she was asked by her mother to deposit in the Dial's mailbox a letter which had been mistakenly delivered to the Moore residence.

Quoting the following passage, appellant asserts that Dial's alleged threats should have been admitted to show his violent character:

"Where evidence of the victim's violent character is offered as a factor bearing upon a defendant's state of mind, evidence of specific instances of conduct is admissible, but only if it can be shown that the defendant had knowledge of such specific instances of conduct. *State v. Schmidt* (1979), 65 Ohio App.2d 239 [19

O.O.3d 201, 417 N.E.2d 1264]." *State v. Ramey* (Sept. 19, 1986), Ashtabula App. No. 1251, unreported, at 5, 1986 WL 10931.

Even if verbal threats alone could qualify as specific instances of conduct, cf. *Ramey,* there is no evidence in the record to suggest that appellant had previous knowledge of the fact of this claimed statement.

■ Appellant further submits that the statement should have been admitted for the sole purpose of impeachment. This court holds that the trial court did not abuse its discretion in ruling that the minimal probative value was substantially outweighed by the prejudicial effect on the jury. Evid.R. 403(A); *State v. Rahman* (1986), 23 Ohio St.3d 146, 152, 23 OBR 315, 320, 492 N.E.2d 401, 407–408.

Appellant's fourth assignment of error is meritless.

■ Appellant's fifth assignment of error asserts that the trial court was required to enter a judgment of acquittal pursuant to Crim.R. 29. This rule provides:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."

Although not developed in the argument in his brief, appellant states in his assignment of error that his conviction must be reversed because the circumstantial evidence regarding the requisite *mens rea* for each offense was insufficient to exclude all reasonable theories of innocence. However, in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, prior precedent was overruled, and it was held that circumstantial evidence need not be irreconcilable with every reasonable theory of innocence in order to support a conviction. Based upon the premise that circumstantial and direct evidence inherently possess the same probative value, it was held that the circumstantial evidence must only satisfy the reasonable doubt standard to be sufficient. See *State v. Doane* (Apr. 30, 1993), Trumbull App. 91–T–4545, unreported, at 5, 1993 WL 164775. The reasonable doubt standard of review was discussed in *State v. Reed* (May 31, 1991), Lake App. No. 89–L–14–130, unreported, at 11, 1991 WL 95227:

"A judgment for acquittal shall not be entered 'if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been prove[n] beyond a reasonable doubt.' *State v. Bridgeman* (1978), 55 Ohio St.2d 261 [9 O.O.3d 401, 381 N.E.2d 184], syllabus. The issue of guilt or innocence will be presented to the jury if the evidence 'viewed in the light most favorable to the government is such that "a reasonable man might fairly find guilt beyond a reasonable doubt." ' *Id.* at 263 [9 O.O.3d at

402, 381 N.E.2d at 185]." See, also, *State v. Smith* (1991), 61 Ohio St.3d 284, 289, 574 N.E.2d 510, 516.

Based upon a review of all the evidence, including the evidence going to self-defense, see *Martin v. Ohio* (1987), 480 U.S. 228, 234, 107 S.Ct. 1098, 1102, 94 L.Ed.2d 267, 274–275, we hold that the jury could reasonably conclude that all the elements of attempted murder and felonious assault were proven beyond a reasonable doubt.

In his sixth assignment of error, appellant argues that the trial court erred in overruling his motion for a new trial. Appellant bases this assertion upon his counsel's failure to request instructions regarding character evidence and the lesser included offense of negligent assault. These failures are claimed to have deprived appellant of the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.

█ In his brief, appellant failed to argue with respect to the character evidence instruction. Accordingly, this issue will not be reviewed. See App.R. 12(A)(2).

█ A review of the record suggests that defense counsel did not neglect to request an instruction on negligent assault, but rather, chose not to request this instruction. On several occasions during the course of the trial, the trial court inquired of defense counsel concerning instructions on lesser included offenses.

A defendant claiming ineffective assistance of counsel must show both that (1) counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, and (2) the deficient performance deprived the defendant of a fair trial, the result of which is reliable. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; *State v. Post* (1987), 32 Ohio St.3d 380, 388, 513 N.E.2d 754, 762–763. In *Strickland,* the court stated that because of the inherent difficulties in making the first determination, a court must indulge in a strong presumption that the challenged action might be considered sound trial strategy. *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695.

Considering a similar challenge, the Montgomery County Court of Appeals held that counsel's failure to request a jury instruction did not deprive the defendant of the effective assistance of trial counsel:

"In a case in which there is conflict in the testimony and the defendant has a reasonable hope that the jury will believe his evidence and return a verdict of not guilty, it is a matter of trial strategy whether to seek to have the jury instructed concerning a lesser-included offense, or not to seek such an instruction and to

hope for an acquittal." *State v. Catlin* (1990), 56 Ohio App.3d 75, 564 N.E.2d 750, paragraph three of the syllabus.

Appellant has failed to overcome the presumption that his counsel's failure to request the jury instruction was the product of sound trial strategy.

Appellant's sixth assignment of error lacks merit.

■ In his seventh assignment of error, appellant argues that the requirement in Ohio that a defendant prove by a preponderance of evidence the affirmative defense of self-defense violates the Fourteenth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution. See R.C. 2901.05.

The Supreme Court of Ohio rejected the same argument and found that the Ohio scheme did not violate the federal Constitution in *State v. Martin* (1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166. The United States Supreme Court affirmed this decision in *Martin v. Ohio* (1987), 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267.

Appellant requests that this court adopt the dissenting opinions in the above decisions and find that the Ohio scheme violates Section 10, Article I of the Ohio Constitution. It does not appear that this issue was specifically addressed by the majority in either *State v. Martin* (1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166, or in *Jackson*, 22 Ohio St.3d 281, 22 OBR 452, 490 N.E.2d 893. However, we find no indication in these cases that the Supreme Court of Ohio would find a violation of this state constitutional provision, nor do we perceive any basis for holding independently with respect to the instant issue that the due process protection afforded by Section 10, Article I of the Ohio Constitution exceeds that afforded by the Fourteenth Amendment.

Accordingly, appellant's seventh assignment of error is without merit.

For the foregoing reasons, appellant's assignments of error are without merit, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CACIOPPO, J., concurs in judgment only.

CHRISTLEY, P.J., dissents.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.

CACIOPPO, Judge, concurring in judgment only.

It is reprehensible that the prosecutor in this matter finds it necessary to say to a jury:

"if you make a judgment in this case based upon the fact that the Defendant is 75, that he is in bad health, that let's give him a break, then you have violated your oaths and *you have committed a crime just as the Defendant has* committed a crime." (Emphasis added.)

The underscored statement is opposed to manifest reason and truth.

Available to the office of the prosecutor are all the tools to seek and obtain justice. Therefore, the prosecutor should be held to a greater degree of accountability for his conduct. This type of conduct must be more seriously addressed by the courts than a mere sustaining of an objection.

The prosecutor is deemed to be an officer of the court who has the primary function of eliciting the true facts of the case in seeking justice and no more.

For the prosecutor to make a statement that Moore and his lawyer "manufactured evidence and a defense" falls short of his duty and demeans our valued legal system and profession. This cannot be countenanced by the courts or the legal profession.

A review of the record indicates there was sufficient evidence for a jury to arrive at a just verdict.

There was no need for the prosecutor to indulge in loose verbal deception.

CHRISTLEY, Presiding Judge, dissenting.

While I concur in the analysis of the lead opinion as to the final six assignments, I cannot agree with its treatment of the first assignment. In concluding that appellant was not denied a fair trial as a result of certain statements made by the prosecutor during closing arguments, the lead opinion holds that the statements were not prejudicial because they were warranted under both the law of this state and the facts of this case.

After reviewing the relevant case law and the record before us, I conclude that the statements were prejudicial because they contain a misstatement concerning appellant's duty to remain in his home after the first confrontation, *i.e.*, his duty to retreat.

During the rebuttal portion of the state's closing argument, the prosecutor stated to the jury that under the facts of this case, appellant "lost" the defense of self-defense when he came back outside his home with a gun and confronted his neighbor, Patrick Dial, for the second time. The sole inference which the jury could have drawn from this statement was that after appellant had initially retreated into his home, he was required under the law to remain inside his home and avoid any further confrontation with Dial, regardless of whether he felt Dial

might still be on appellant's property or whether he felt Dial posed a threat to appellant or his family or property.

In concluding that the prosecutor's remark constituted a correct statement of the law of this state, the lead opinion relies upon the decision in *Cleveland v. Hill* (1989), 63 Ohio App.3d 194, 578 N.E.2d 509, in which the Eighth Appellate District held that the victim of a physical attack is obligated to retreat into his home from the driveway on his property before he can properly act in self-defense. For the following reasons, I find the logic supporting this holding to be unpersuasive.

As the lead opinion aptly notes, a criminal defendant is not entitled to a jury instruction on the affirmative defense of self-defense unless he has presented some evidence establishing, *inter alia,* that he did not violate any duty to retreat or avoid the danger. However, as an exception to this basic requirement, the Supreme Court of Ohio has consistently held that when the assault or attack occurs in a person's home, that person is not obligated to retreat any further before employing any means needed to repel the assault. See *State v. Peacock* (1884), 40 Ohio St. 333.

Even though the "home" exception to the duty to retreat has existed for more than a century, the Supreme Court of Ohio has never specifically stated what constitutes a person's "home" in this particular context. Nevertheless, a review of recent Ohio Supreme Court decisions indicates that the person does not have to be within the "four walls" of the structure itself before the exception will apply.

For example, in *State v. Jackson* (1986), 22 Ohio St.3d 281, 22 OBR 452, 490 N.E.2d 893, the defendant shot his alleged assailant on the porch of his apartment. While ultimately concluding that the other requirements for self-defense had not been met, the court stated if a general instruction on self-defense had been warranted under the facts of the case, "a special instruction on [the defendant's] duty to retreat when attacked in or *about* his home" would have been appropriate. (Emphasis added.) *Id.* at 284, 22 OBR at 454–455, 490 N.E.2d at 893.

In this district, the court has held that a tent and its campsite are the equivalent of "home" in regards to the duty to retreat. *State v. Marsh* (1990), 71 Ohio App.3d 64, 593 N.E.2d 35.

Although the lead opinion cites *Jackson* as being supportive of its holding on this issue, it does not attempt to explain why the porch in *Jackson* was "about" the home, but the driveway in the instant case was not. Given the precedent in this state and district as to the right of a property owner to defend from or to eject a trespasser from either his home or property, I do not believe that such a

distinction can be made. Accordingly, I would hold that the "home" exception to the duty to retreat was applicable to appellant's driveway.

As a general proposition, every individual in this state "has the right to defend himself and his property by the use of such force as circumstances require to protect himself against such danger as he has good reason to apprehend * * *." *State v. McLeod* (1948), 82 Ohio App. 155, 157, 37 O.O. 522, 522, 80 N.E.2d 699, 700. Ohio courts have also consistently held that in exercising this right to defend self and property, every individual has a constitutional right to have possession of a firearm.

In interpreting Section 4, Article I of the Ohio Constitution, which contains the right-to-bear-arms clause, the Supreme Court of Ohio has recently held again that the clause "was obviously implemented to allow a person to possess certain firearms for defense of self and *property*." (Emphasis added.) *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 43, 616 N.E.2d 163, 169, citing *State v. Hogan* (1900), 63 Ohio St. 202, 218–219, 58 N.E. 572, 575–576.

Despite its constitutional underpinnings, the right to defend self and property is not absolute. The right has always been subject to certain limitations which are predicated upon the nature of the threat to self or property, *i.e.*, in exercising the right to defend, a person can only use the force necessary to subdue the instant threat. *McLeod.* Thus, while a person may be justified under certain circumstances in employing lethal force to protect herself or her home, *Allison v. Fiscus* (1951), 156 Ohio St. 120, 124, 45 O.O. 128, 130, 100 N.E.2d 237, 239–240, such force cannot be used to protect mere property:

"While a person has a right to protect his property from a trespass, and, after warning or notice to the trespasser, use such force as is reasonably necessary so to do, he cannot unlawfully use fire arms to expel the intruder where he has no reasonable ground to fear the trespasser will do him great bodily harm." *State v. Childers* (1938), 133 Ohio St. 508, 516, 14 N.E.2d 767, 770.

However, the converse of the *Childers* holding has also been recognized by the courts of this state, *i.e.*, a property owner can use deadly force to eject a trespasser if he reasonably fears death or great bodily harm. See, *e.g.*, *State v. Williams* (Sept. 30, 1992), Hamilton App. Nos. C–910582 and C–910583, unreported, at 4, 1992 WL 247549. Moreover, Ohio courts have recognized that if the firearm is employed in a nonthreatening manner, a person can be in possession of a firearm while ejecting a trespasser who does not pose an imminent threat to the person.

For example, in *State v. Fields* (1992), 84 Ohio App.3d 423, 616 N.E.2d 1185, the defendant successfully appealed a conviction of a charge of aggravated menacing, R.C. 2903.21. The charge was based upon an incident in which the

defendant ejected two trespassers from private property while in possession of a gun. In concluding that the defendant's conviction had not been predicated upon sufficient evidence, the Twelfth Appellate District emphasized that the defendant had not verbally threatened the trespassers with the gun and had not pointed the gun at them. She merely had it visibly in her possession.

Agreeing with the foregoing logic, I conclude that under the laws of this state, not only does a property owner have a right to confront any trespasser and attempt to eject him from the property, but that the owner can lawfully carry a firearm when confronting the trespasser. While the owner cannot use or threaten to use the firearm unless the trespasser poses an imminent threat to the owner's life or physical well-being, the owner can, nevertheless, carry the firearm when he is uncertain as to the amount of danger posed by the trespasser.

Given that a property owner can lawfully confront any trespasser, I further conclude that the law does not require the property owner to retreat into his house when it is necessary to arm himself in meeting the potential threat posed by a trespasser. Stated differently, I conclude that minimally the "home" exception to the duty to retreat is also applicable to the curtilage upon which the home is situated.

Based on the proceeding logic, the "home" exception is arguably extendable to the furthermost perimeters of the property; however, that is not an issue with which we are faced at this time.

In light of the historical and fundamental nature of the right to defend self and property, any other conclusion would create not only an inconsistency in the law, but would also place an unrealistic restriction upon a property owner. While I would agree that the law should attempt to discourage the use of deadly force, it should not do so at the expense of curbing such a basic right.

As was noted previously, the prosecutor in this case stated to the jury during closing arguments that appellant had "lost" the defense of self-defense when he went back outside his house following the initial confrontation. Given the foregoing discussion, the prejudicial nature of the statement is obvious. As to this point, I would also note that the trial court did not give an instruction to the jury on the "home exception" to the duty to retreat. As a result, even if the jury believed appellant's testimony as to the nature of the second confrontation, it still could have found appellant guilty for the reason put forth by the prosecutor, to-wit: that by simply leaving his home appellant lost his right to assert self-defense.

For the foregoing reasons, I would hold that appellant was denied a fair trial as a result of the prosecutor's statement concerning the duty to retreat. Under this

analysis, appellant's first assignment would have merit. Accordingly, I would reverse the judgment of the trial court and remand the action for a new trial.