JOURNAL ENTRY and OPINION
On December 22, 1999, the applicant, Sharon Burns, pursuant to App.R. 26 (B) applied to reopen this court's judgment in State ofOhio v. Sharon Burns (Aug. 8, 1996), Cuyahoga App. No. 69676, unreported, which affirmed her conviction and sentence for murder. Although the State of Ohio never filed a brief in opposition, this court now denies the application.
 FACTUAL AND PROCEDURAL BACKGROUND
On the night of June 11, 1995, Sharon Burns, four young children, two of which were hers, and Sharon's sister and brother were in Sharon's Cliffview apartment. A group of young males, including brothers Billy and Gene Taylor, gathered outside the apartment. An argument ensued between the two groups. One of the young men threatened to beat up Sharon, and one of them threw a chicken bone through an open window. Sharon Burns responded by throwing a bottle which hit a tree. When one of the young males hurled a rock, which shattered glass in the apartment, Ms. Burns called the police, and the young males scattered. Billy and Gene Taylor went to the second floor of the apartment building.
Nevertheless, motivated by fear that the young males would return and try to do more damage to her apartment and family, Ms. Burns went outside with an eight-inch kitchen knife to act as a picket and protect her children until the police arrived. The Taylors and the Burnses continued their verbal battle and Sharon's brother joined her outside. The Taylors also came back outside. Sharon's sister testified that, as Billy Taylor came downstairs, he put something in his jacket which she believed was a gun.
Once outside, the Taylors began hitting Sharon's brother. Sharon went to her brother. Prosecution witnesses testified that Sharon ran up to Billy Taylor, stabbed him and then went inside. A resident of the apartment building heard Ms. Burns tell Billy Taylor that she would "F___ him up." Sharon Burns testified that she did not know how Billy Taylor got stabbed. She said she was trying to help her brother up. She knew that Billy Taylor ran up to her, then abruptly stopped and turned away. Sharon stated that she did not intend to stab Billy Taylor or kill him. Shortly after being stabbed, seventeen-year-old Billy Taylor died of a five-inch deep penetrating wound which pierced his lungs. The autopsy showed traces of cocaine and marijuana in him. When arrested, Sharon Burns admitted that she stabbed Billy Taylor, but maintained that she had done so accidentally.
Ms. Burns' murder trial began on September 11, 1995. Duringvoir dire, and without objection from counsel, the court excused a venire man for cause because of a previously scheduled business trip. Subsequently, the court allowed the state, over defense objection, to excuse peremptorily a black venire man and excused, for cause over defense objection, a second venire man who also had a prearranged business trip.
At trial the witnesses testified as indicated above. Sharon Burns defended on the grounds that the stabbing was an accident. The trial judge instructed on both murder and negligent homicide. The jury found her guilty of murder.
Ms. Burns' trial counsel also represented her on appeal. He argued that the verdict was against the manifest weight of the evidence, that the trial judge abused his discretion in excusing the two venire men for cause and that the trial judge erred in allowing the prosecution to use a peremptory challenge to exclude a black person on the basis of race. This court affirmed the conviction and sentence in an entry journalized on August 19, 1996. On October 3, 1996, she appealed to the Supreme Court of Ohio which dismissed the appeal as not involving any substantial constitutional questions on January 30, 1997. Ms. Burns filed this application approximately three years later.
 DISCUSSION OF LAW
Ms. Burns now argues that her appellate counsel was ineffective because he did not raise the issue of ineffective assistance of trial counsel. She submits that her attorney, as trial counsel, was ineffective for the following reasons: (1) He failed to raise the defense of self-defense by failing to present evidence for that issue, failing to argue it and failing to request the necessary jury instructions. Ms. Burns notes that self-defense is a complete defense and, if successful, would have exonerated her from any criminal wrong-doing. (2) He failed to insure that she was tried by a jury of her peers both as to race and economic status. (3) He failed to present expert testimony on Billy Taylor's mental state and drug usage. She submits that such evidence would have supported self-defense.
App.R. 26 (B) (1) and (2) (b) require applications claiming ineffective assistance of appellate counsel to be filed within ninety days from journalization of the decision unless the applicant shows good cause for filing at a later time. The December 22, 1999 application was filed three years and four months after this court's decision. Moreover, when this court issued that decision, State v. Murnahan (1992), 63 Ohio St.3d 60,584 N.E.2d 1204, had been released for over four years and App.R. 26 (B) had been the law for over three years. Therefore, Ms. Burns' claims of ignorance of the law because she is a layman are not persuasive to establish good cause. The laws were too well known and too much time elapsed. State v. Klein (Apr. 8, 1991), Cuyahoga App. No. 58389, unreported, reopening disallowed (Mar. 15, 1994), Motion No. 49260, affirmed (1994), 69 Ohio St.3d 1481;State v. Trammell (July 24, 1995), Cuyahoga App. No. 67834, unreported, reopening disallowed (Apr. 22, 1996), Motion No. 70493; State v. Cummings (Oct. 17, 1996), Cuyahoga App. No. 69966, unreported, reopening disallowed (Mar. 26, 1998), Motion No. 92134; and State v. Young (Oct. 13, 1994), Cuyahoga App. Nos. 66768 and 66769, unreported, reopening disallowed (Dec. 5, 1995), Motion No. 66164. This defect alone is sufficient to dismiss the application.
Moreover, if an applicant is alleging that appellate counsel was ineffective for failing to challenge the effectiveness of trial counsel when the trial counsel and appellate counsel are the same person, such a contention is not persuasive because an attorney cannot realistically be expected to argue his own incompetence. State v. Cole (1982), 2 Ohio St.3d 112,443 N.E.2d 169; State v. Carter (1973), 36 Ohio Misc. 170; State of Ohio v.John Mitchell (Apr. 3, 1997), Cuyahoga App. No. 70821, unreported, reopening disallowed (Feb. 24 1998), Motion No. 84988; State of Ohio v. A. J. Stovall (Jan. 22, 1998), Cuyahoga App. No. 72149, unreported, reopening disallowed (Feb. 10, 1999), Motion No. 98564; and State of Ohio v. Peter Viceroy (May 20, 1996), Cuyahoga App. No. 68890, unreported, reopening disallowed, (Mar. 25, 1999), Motion No. 1910.
Additionally, Ms. Burns fails to make a persuasive argument that her appellate counsel was ineffective for not raising the issues of self-defense, improper jury selection and the lack of an expert witness. In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington
(1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052; State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
In Strickland, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"Strickland, 104 S.Ct. at 2065.
Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jonesv. Barnes (1983), 463 U.S. 745, 77 L.Ed.2d 987, 103 S.Ct. 3308,3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen (1996), 77 Ohio St.3d 172,672 N.E.2d 638.
Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
In the instant case, counsel in the exercise of reasonable professional judgment could conclude that self-defense would not be persuasive or even allowed because by throwing the bottle and taking the knife outside after the police has been called, Sharon violated her duty to retreat and/or avoid danger. In State v.Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, Paragraph Two of the Syllabus, the Supreme Court of Ohio listed the requisites for self-defense: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat. In this case the Supreme Court held, inter alia, that the slayer had forfeited his right to self-defense when he stabbed the victim in the hallway outside of his apartment. Similarly in State v. Moore (1994), 97 Ohio App.3d 137,646 N.E.2d 470, when the defendant and his neighbor argued, the defendant went inside his house, retrieved his gun and shot the neighbor close to the property line. The Court of Appeals indicated that under such circumstances the defendant had gone looking for trouble and self-defense would not be available. This court has also ruled that for purposes of self-defense, the duty to retreat extends to the driveway of one's home. City ofCleveland v. Hill (1989), 63 Ohio App.3d 194, 578 N.E.2d 509. Given such rulings, appellate counsel could reasonably conclude in the exercise of professional judgment that under the facts of this case arguing the failure of trial counsel to raise self-defense would not be persuasive.
Moreover, Sharon Burns' testimony that she did not intend to stab Billy Taylor and that she did not know how he was stabbed is inconsistent with self-defense. Her initial statement to the police said that the stabbing was an accident. The courts of Ohio have ruled that the defenses of accident and self-defense are mutually exclusive. "In a case of homicide, where defendant testifies that she did not intend to fire the fatal shot, and that she did not knowingly `pull the trigger,' such testimony is entirely inconsistent and irreconcilable with the right of self-defense." State v. Champion (1924), 109 Ohio St. 281,142 N.E. 141, Paragraph Three of the Syllabus, and State v. LaFreniere
(1993), 85 Ohio App.3d 840, 621 N.E.2d 812. In those cases the court ruled that a trial court would err if it gave instructions on both accident and self-defense. Because Ms. Burns' testimony and statements proclaimed accident, trial counsel was not ineffective for defending on that ground instead of self-defense.
Moreover, prejudice is very speculative. If the jury believed the prosecution witnesses to return a verdict of guilty, it is very speculative to think that recharacterizing the evidence in terms of self-defense would change the jury verdict.
Nor will this court second guess the strategy and tactics of counsel who raised the issue of jury selection based on the specific incidents of trial rather than on broad assertions of constitutional violations. Similarly, the autopsy report established that Billy Taylor had taken drugs. It is very speculative to think how an expert witness could have amplified on this fact. This court will not second guess the strategic decision to not call an expert witness, especially when it appears that such testimony would only be cumulative.
Accordingly, this court denies the application to reopen.
DYKE, A.J., and BLACKMON, J., CONCUR.
 __________________________ MICHAEL J. CORRIGAN, JUDGE