OPINION
{¶ 1} Appellant, Willette F. Fordham, appeals from the November 14, 2001 judgment entry in which the Lake County Court of Common Pleas convicted and sentenced her on two counts of aggravated arson.
 {¶ 2} On August 13, 2001, the grand jury indicted appellant on two counts of aggravated arson. Count one was in violation of R.C.2909.02(A)(2) and was a felony of the second degree. Count two was in violation of R.C. 2909.02(A)(1) and was a felony of the first degree. At her arraignment, appellant entered a plea of not guilty to the charges. A jury trial commenced on October 1, 2001.
 {¶ 3} The evidence at trial revealed that a fire broke out in the apartment of Marilyn James ("Marilyn") on June 12, 2001. It was reported at 11:04 a.m. by a neighbor. A fire inspector determined that the fire had been started with charcoal which had been ignited with lighter fluid. The fire inspector also estimated that the fire burned for thirty to forty-five minutes before the arrival of the firefighters.
 {¶ 4} The events leading up to the fire revealed that Marilyn and appellant were romantically involved. Appellant moved into Marilyn's apartment and had a key to the apartment, but a month before the fire, Marilyn took the key back and had the locks changed. Their relationship was often tumultuous. In fact, neighbors often heard the two women argue.
 {¶ 5} On June 11, 2001, the day before the fire, appellant and Marilyn argued because of a kitchen fire that occurred in the apartment on June 9, 2001, which resulted in appellant being burned on her left side and breast area. The two women bickered, and according to appellant, Marilyn asked appellant to leave the apartment. Appellant was angry because she felt Marilyn should have been indebted to her since she deemed she had saved Marilyn's life during the June 9 fire. Marilyn revealed that appellant "picked up [her] lighter fluid and she said she was going to set [Marilyn's] house on fire." Marilyn ran out of her apartment and told the property manager, Sandra Havas ("Havas") about the threat. Appellant ran after Marilyn and was outside Havas' office door screaming and yelling about how she had been burned in a stove fire. She threatened to sue the apartment complex as a result of the burns. Marilyn exited Havas' office and the two women argued again, which caused Havas to call the police.
 {¶ 6} Deputy Kevin Coleman ("Deputy Coleman") of the Lake County Sheriff's Office arrived on the scene and spoke with appellant and Marilyn. He ordered appellant off of the property and told her she was not allowed back on the premises. Deputy Coleman testified that he noticed appellant was agitated and upset as she walked away from the apartment complex.
 {¶ 7} Later that evening, a neighbor observed appellant on the premises of the apartment complex. Specifically, at around 8:00 p.m. on June 11, 2001, appellant was seen in the back seat of Marilyn's car which was parked in the parking lot. The neighbor testified that when appellant saw him, "she just sat back *** and looked at [him] ***."
 {¶ 8} Marilyn spent the night at her brother's house on the night of June 11, 2001. She stayed there because of the fight between her and appellant. Prior to leaving for her brother's home, she noticed appellant had left a bag of bandages and a pair of tennis shoes in the apartment. However, the day of the fire after the fire had been extinguished, upon walking through her apartment with the fire deputies and police, Marilyn noticed the bag and shoes were missing.
 {¶ 9} Detective Larry Harpster ("Detective Harpster") of the Lake County Sheriff's Department testified that appellant went voluntarily to the sheriff's office on June 13, 2001, the day after the fire. After administering her Miranda rights, he questioned her about whether she had threatened to burn down Marilyn's apartment. Appellant denied the threat. She proceeded to tell Detective Harpster that after she was removed from the premises on June 11, she walked around Painesville and slept on a park bench. When she woke up, she ran into Howard Williams ("Williams"), who gave her a ride to her friend's house. Williams' testimony verified that he gave her a ride. However, the investigation revealed that Williams picked appellant up from an area that was four-tenths of a mile from Marilyn's apartment.
 {¶ 10} The assistant property manager of the apartment complex, Frank Ball ("Ball"), related that he received several phone calls from appellant between 10:07 a.m. and 10:26 a.m., on the morning of the fire. Appellant was angry that she had been told to stay off the premises. She wanted permission to be on the property, but Ball did not consent to this. On the other hand, appellant testified that she tried to call Ball in the evening hours of June 11, 2003. However, the phone records indicate that Ball received five phone calls on June 12, and that the calls originated from Marilyn's apartment. Appellant denied placing any calls to Ball on June 12, but she did acknowledge misleading the investigating officer about where she had placed the telephone calls from. She explained that she lied because she did not trust the investigating officer.
 {¶ 11} Appellant's witness, Melissa Sirca ("Melissa"), testified that appellant had done some babysitting for her in June 2001. Specifically, Melissa recalled that appellant babysat twice "since she had the burn ***." However, Melissa was not positive as to whether appellant babysat on the night of the fire. She was also unable to recall the exact evening appellant spent the night at her house. Melissa related that appellant babysat for her " in the summertime and in the wintertime but [she was] not sure of the dates." Melissa stated that appellant sent her a letter to her home after appellant's arrest. With reference to appellant's letter, the following exchange took place between Melissa and the prosecutor:
 {¶ 12} "Q. And in the letter did she discuss the charges in this case with you?
 {¶ 13} "A. Yes, she said, she stated that the days she baby-sat for me and that she was scared.
 {¶ 14} "Q. She said she was scared and she was trying to suggest to you through the letter that she baby-sat for you on the date this happened?
 {¶ 15} "A. Yes.
 {¶ 16} "Q. You have no independent recollection of that? You have no ability to say that she was at your house on that day?
 {¶ 17} "A. Right."
 {¶ 18} Appellant was arrested and incarcerated at the Lake County Jail where she told her cellmate that she spent the night in Marilyn's car on June 11, 2001. Appellant's cellmate also revealed that appellant told her that upon her release, she was going to kill Marilyn.
 {¶ 19} After the state presented its case in chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court overruled the motion. After appellant presented her case, she renewed her Crim.R. 29 motion, which was also overruled.
 {¶ 20} The jury found appellant guilty on both counts of aggravated arson. The trial court sentenced appellant on November 14, 2001, to six years in prison on count one and seven years in prison on count two. The sentences were to run concurrently with each other, and appellant received one hundred twenty-six days credit for time already served. Appellant timely filed an appeal and now assigns the following as error:
 {¶ 21} "[1.] The trial court erred to the prejudice of [appellant] by failing to grant a motion for mistrial when the prosecutor engaged in misconduct violating [appellant's] due process rights and rights to fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution.
 {¶ 22} "[2.] The trial court erred to the prejudice of [appellant] when it denied her motion for acquittal made pursuant to Crim.R. 29.
 {¶ 23} "[3.] The trial court erred to the prejudice of [appellant] when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 24} For her first assignment of error, appellant alleges that her due process rights were violated and she was denied a fair trial when the trial court failed to grant a motion for mistrial.
 {¶ 25} The decision to grant or deny a motion for mistrial is also within the sound discretion of the trial court. State v. Garner (1995),74 Ohio St.3d 49, 59. Absent a showing that the accused suffered material prejudice, a reviewing court will not disturb the exercise of that discretion. State v. Sage (1987), 31 Ohio St.3d 173, 182. "Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Garner at 59.
 {¶ 26} Crim.R. 33(A)(2) provides the grounds for granting a new trial and states in part that: "[a] new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: *** [m]isconduct *** of the prosecuting attorney ***." When a motion for a mistrial is premised upon allegations of prosecutorial misconduct, a determination must be made as to whether the defendant's substantial rights have been materially affected by the alleged misconduct. State v. Johnston (1988), 39 Ohio St.3d 48, 59. Thus, the court must decide if the defendant received a fair trial. Id.
An appellate court will review the trial court's decision in this regard under a due process analysis, rather than an abuse of discretion analysis. Id.
 {¶ 27} Further, "a prosecutor has wide latitude in closing arguments. As long as an improper comment is isolated and does not deprive the defendant of a fair trial, it will not constitute reversible error. *** `The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused.' (***)" State v. Bleasdale (Sept. 6, 1996), 11th Dist. No. 95-A-0047, 1996 WL 535283, at 2. The factors to be weighed in deciding if the remarks were prejudicial include: (1) the nature of the closing remarks; (2) whether an objection was made by counsel; (3) whether the court gave corrective instructions; and (4) the strength of the evidence against the defendant. State v. Moore (1994),97 Ohio App.3d 137, 143.
 {¶ 28} In the instant matter, the comment the prosecutor made during closing argument which appellant claims was prejudicial was in regard to the testimony of Melissa. The prosecutor's comment in closing argument was as follows:
 {¶ 29} "The fact that she doesn't confess because she's afraid to and it came across in [Ball's] testimony when she calls the night before the fire that she's desperate and I think that also came across that she's desperate through the testimony of [Melissa], she writes her this letter from jail saying these are the days I was there, right, this is what I need you to say."
 {¶ 30} Appellant's attorney objected and moved for a mistrial. Appellant's lawyer stated that Melissa's testimony was mischaracterized. However, the trial court overruled the motion. We agree with the state that the foregoing reference by the prosecutor in final argument regarding a portion of Melissa's testimonial colloquy in question was a reasonable characterization of her trial testimony on this subject from which an appropriate inference could have been made from such testimony. It is our view that appellant has failed to demonstrate that any of the remarks prejudicially affected her substantial rights. She further failed to show that she was denied a fair trial as a result of the prosecution's actions. In addition, the evidence presented at trial was overwhelming evidence because appellant threatened Marilyn the day before the fire that she would set the apartment on fire, appellant was seen near the apartment the night before and on the morning of the fire, and appellant placed phone calls from Marilyn's apartment in close proximity to the time the fire occurred. Thus, the trial court did not err in denying appellant's motion for a mistrial. Appellant's first assignment of error lacks merit.
 {¶ 31} As appellant's second and third assignments of error raise questions regarding the adequacy of the evidence, they will be addressed in a consolidated fashion. In her second assignment of error, appellant alleges that the trial court erred by denying her motion for acquittal pursuant to Crim.R. 29. In the third assignment of error, appellant claims her conviction was against the manifest weight of the evidence.
 {¶ 32} The Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied in Statev. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, which states that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 33} Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state. As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4-5:
 {¶ 34} "`"(***) (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. ***"'
 {¶ 35} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' *** `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' ***." (Emphasis sic.) (Citations omitted.)
 {¶ 36} An appellate court must look to the evidence presented to determine if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt. State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 WL 535675, at 3. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 37} Applying this standard to the matter at hand, the state was required to present sufficient evidence to establish that appellant committed the offense of aggravated arson. The offense is set forth in R.C. 2909.02(A)(1) and (2), which states that "[n]o person, by means of fire or explosion, shall knowingly *** [c]reate a substantial risk of serious physical harm to any person other than the offender *** [or] [c]ause physical harm to any occupied structure."
 {¶ 38} In the case at hand, appellant alleges that there was insufficient evidence that she was the individual responsible for the fire. It is our view that although no one actually witnessed appellant set Marilyn's apartment on fire, the state presented sufficient evidence that appellant was in the vicinity of the apartment complex the evening before the fire and the morning of the fire. In fact, one neighbor testified that he saw appellant in Marilyn's car the evening before the fire. Appellant's cellmate also testified that appellant told her she was in Marilyn's car the night before the fire. There was also evidence presented that appellant had a bag and pair of shoes in Marilyn's apartment on June 11, 2001, but those items were not present when investigators walked through the apartment following the fire.
 {¶ 39} Further, there was testimony which demonstrated that appellant made phone calls from Marilyn's apartment on the morning of the fire. Specifically, Ball testified that he received several phone calls from appellant between 10:07 a.m. and 10:26 a.m. on the morning of the fire. Additionally, there was evidence presented that these calls were placed from Marilyn's apartment. Those facts taken together with the testimony of the investigators that the fire burned for thirty to forty-five minutes before the arrival of the firefighters at 11:04 a.m., prove that appellant was in Marilyn's apartment at the time the fire was set. Moreover, appellant threatened to set the apartment on fire the day before the June 12 fire occurred in the manner in which it was determined that it in fact was done. Therefore, the record provided sufficient evidence presented at trial to prove that appellant committed aggravated arson.
 {¶ 40} Appellant also argues that the verdict was against the manifest weight of the evidence. Though the evidence may have been sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. Schlee, supra, at 5. When addressing whether a verdict is against the manifest weight of the evidence, a reviewing court examines "`the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. ***'" State v. Davis (1988), 49 Ohio App.3d 109, 113. A judgment of the trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 41} Here, appellant was convicted of aggravated arson, which the state proved. It is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In the case at hand, the jury must have found the state's witnesses to be more credible. We conclude, after reviewing the record and weighing the evidence and all reasonable inferences, that the judgment of the trial court was supported by competent, credible evidence. There exists substantial evidence upon which a jury could reasonably conclude that all elements of aggravated arson were proven beyond a reasonable doubt. It is also clear that appellant's actions created a substantial risk of serious physical harm to people other than herself and physical harm to a structure. For instance, the obvious risk posed to firefighters who were called to extinguish the fire, and the fact that the apartment was set on fire posed a risk to neighbors in the complex. These additional hazards increased the risk of serious physical harm to anyone in the vicinity of the burning apartment. Further, the fire caused "physical harm" to the apartment itself.
 {¶ 42} Likewise, after an examination of the entire record, including the credibility of all the witnesses who testified, it is our view that there was no manifest miscarriage of justice requiring the conviction to be reversed because a jury could reasonably conclude that appellant was guilty of the charged offenses. Appellant's second and third assignments of error are not well-founded.
 {¶ 43} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL and ROBERT A. NADER JJ., concur.
ROBERT A. NADER, J., retired, of the Eleventh Appellate District, sitting by assignment,