JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Sundiata Langford, appeals his jury trial conviction for murder with a firearm specification and having a weapon while under a disability. His case was tried together with two other co-defendants, who had separate appeals already heard.[1]
 {¶ 2} On the evening of August 15, 2001, four children were sitting on the front porch with the victim, thirteen-year-old Warren Culbreath: his seventeen-year-old sister, his fourteen-year-old stepbrother, and a fourteen-year-old friend. As they were chatting and enjoying the evening, they saw an older model, white four-door Chevy stop at the corner of East 120th, the street they were on, and Kelton. The occupants of the white car started shouting at a young man on a bike who was standing on the corner talking to two young women with a baby in a stroller.
 {¶ 3} The man dropped his bike and ran to 11811 Kelton, a house where he and his friends used to hang out. He testified that he ran for his life because the men in the car asked him whether he was Rockland, and, when he told them he was, they shouted, "You killed my nigger."
 {¶ 4} A short time before, a member of the Rockland gang had killed a member of the Bloods. The man stated that he knew the men in the white car were looking for revenge, so he ran to his friend's house and shouted, "The dudes are coming." He heard the tires squeal as he was running up the driveway, and as he vaulted the backyard fence, he heard gunshots. All three defendants, who were in the house on Kelton, gave the police statements that they grabbed weapons when they heard that the men in the white car were coming. All three admitted firing at the white car.
 {¶ 5} Meanwhile, when the victim and friend saw the man drop his bike and run, they stepped off the porch and walked toward Kelton to see what was going on. They lost sight of the car when it went further down Kelton. When they heard tires squealing, however, they knew they needed to run for safety, the friend testified. They ran back to the porch, saw the white car run over the abandoned bike on the corner of Kelton and 120th and then turn back onto 120th driving toward their house. At this point they heard gunshots; they did not see any guns or gunfire coming from the white car.
 {¶ 6} As soon as they heard gunshots, the sister, stepbrother, and the victim ran into the house. Their friend was too frightened to leave the porch, so he laid face down on the floor of the porch until the shooting stopped. The victim's stepbrother ran into the house and literally ran into his father, who had rushed up the basement stairs as soon as he heard gunfire. By this time, the shooting had stopped. The sister estimated at trial that the shooting lasted less than twenty seconds.
 {¶ 7} Gathering the children to make sure they were all right, the victim's stepfather discovered the victim lying part way up the stairs to the second floor. When he looked more closely, he discovered a large bullet wound in the child's back. After the victim's sister called 911, the stepfather took the phone and stated that the boy was shot. The police and EMS arrived shortly thereafter. The boy was taken to Rainbow Babies and Children's Hospital, where he died shortly after arrival.
 {¶ 8} The autopsy showed that the bullet entered the boy's lower back, traveled up his back, breaking several ribs, and then crossed two areas of his brain. The coroner testified that he would have been paralyzed immediately upon impact. The bullet retrieved from the top of his skull was a 7.62 caliber, which is used in an automatic assault weapon like an AK-47 or an M-16. Although the police investigation did not determine the exact trajectory of the bullet, it did determine that the bullet came from the direction of 11811 Kelton.
 {¶ 9} Because the children associated the shooting with the white car, the police initially investigated the murder as a drive-by shooting. They searched the area for shell casings without success but did find the bullet entry into the house. They discovered that the house next door to the victim's also had bullet holes in a downspout as well as several broken windows. Again, the police did not determine the exact trajectory of the bullets.
 {¶ 10} Several days later, the police received an anonymous tip that the shooting came from the Kelton address. They let acquaintances of the defendants know the police wanted to talk to them; all the defendants willingly gave statements prior to being arrested. Each defendant admitted to shooting at the white car but only while the car was still on Kelton, not after it had turned onto 120th. They also stated that the white car's occupants began shooting first. They described their weapons as a .22 hand gun, a .22 rifle, and a .380 handgun. All three told the police that they had given their guns to defendants' friend, from whom the police later recovered only two .22s. The police were never able to recover the .380 the defendant in the case at bar claimed he used in the shooting.
 {¶ 11} All three defendants were tried together and found guilty on all charges, but each appealed separately. The appeal of the defendant in the case at bar is the last of the three appeals to be heard. He states nine assignments of error. The first assignment of error states:
 {¶ 12} "I. Appellant Langford's conviction for murder was not supported by sufficient evidence in violation of the Fifth andFourteenth Amendments to the United States Constitution and Article I, Section 10, to the Ohio Constitution because the state failed to prove that Mr. Langford or his codefendants fired the shot that killed Warren Culbreath."
 {¶ 13} Defendant claims that the state failed to prove that the shot which killed the victim was fired from his yard rather than fired from the white car as it drove past his house shooting. The state is required to prove each element of the offense to satisfy a sufficiency challenge. Evidence is sufficient if, viewed most favorably to the prosecution, a reasonable trier of facts could conclude that the defendant was guilty. State v. Jenks (1991), 61 Ohio St.3d 259. The offense, as stated in the indictment, is causing "the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." R.C.2903.02. Defendant does not dispute that he fired a gun at the white car, which action constitutes felonious assault, a felony of the 2nd degree. Rather, he argues that the state failed to prove that he or one of his codefendants fired the fatal shot.
 {¶ 14} The testimony showed that the defendants were the only persons claiming to see gunfire from the white car. Further, all four children on the porch, as well as the man on the bike, who had been very close to the car, testified that they did not see any guns in the white car. Additionally, no one saw any gunfire from the car, even though it was ten in the evening and the flashes from the guns would have been quite evident when the shooting occurred. Defendant's next-door neighbor testified that the only gunfire she heard came from directly in front of her house and that she heard two different types of weapons, one much louder than the other. Finally, only the defendants stated they heard gunfire before the car had turned onto 120th; no one else confirmed this timing. Thus, except for the defendants' testimony, all the testimony is consistent that the white car did not fire any bullets and that the gunshots came only after the white car had turned onto 120th. A reasonable trier of fact could believe that the evidence showed that the fatal bullet was fired by one of the defendants in defendant's yard. Viewing the evidence most favorably to the prosecution, we find that the evidence is sufficient to support defendant's conviction. The first assignment of error is overruled.
 {¶ 15} For his second assignment of error, defendant states:
 {¶ 16} "II. The conviction against Mr. Langford is against the manifest weight of the evidence when there was no substantial evidence upon which a trier of fact could reasonably conclude that the elements had been proven beyond a reasonable doubt."
 {¶ 17} Assignment of error two challenges the manifest weight of evidence, which is different from sufficiency of evidence. A reviewing court will reverse on manifest weight only if it finds that the trier of fact lost its way in assessing conflicts in the evidence and that a manifest miscarriage of justice resulted requiring a new trial. State v.Tibbs (1982), 457 U.S. 31. Even if the trial court finds that the state presented sufficient evidence to support the conviction, it may still conclude that the manifest weight of the evidence does not support the conviction. State v. Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 18} Defendant claims that his conviction is against the manifest weight of the evidence because the state based its prosecution solely on a shell casing found on the next door neighbor's porch. Several days after the shooting, the woman next door noticed a shell casing on her front door mat. She notified the police and left it undisturbed. The police retrieved the casing, which was the same caliber as the bullet which killed the victim, but they were unable to show that the bullet and casing were from the same gun. The ballistics expert testified that although a bullet can be traced to a certain weapon, it is not possible to show that a casing was from a particular bullet or that a casing was used in a particular gun.
 {¶ 19} Prior to being notified about this casing, but after receiving the tip that the gunshots had come from in front of the neighbor's and defendant's houses, the police had searched the area carefully for casings and found none. The police did not go onto the neighbor's porch, however, until she called them. Defendant argues that a casing found several days after the shooting, and a distance away from where the defendants admitted shooting, is too remote to show any connection with the murder. Because the casing was found to the left of where they were shooting and not the right, and the state's expert testified that an automatic gun ejects casings to the right, defendant argues that this casing is of no significance in this case.
 {¶ 20} Defendant errs in stating that the prosecution's case relied solely on the shell casing found on the neighbor's porch. Although there was conflicting testimony concerning where people thought they heard the shots coming from, the majority of credible evidence shows that the gunfire did not start until after the white car had turned onto 120th street. The state also presented testimony from an expert that if the occupants of the white car had fired an assault rifle outside the windows of the car on 120th, the shell casings would have been in the street for the police to find that night. He also stated that, if the assault rifle had been fired inside the car, the noise would have been deafening to the car's occupants. Further, no credible evidence showed that the occupants of the white car had any guns or fired any guns. Only the defendants claimed they were fired upon by the white car and that they returned fire in self-defense. These defendants also claimed that the gunfire from the white car started when the car was directly in front of defendant's house. A thorough police search, however, showed no bullet holes in defendant's house or car, which was parked in the driveway, or in the neighbor's house. If the occupants of the white car had fired an assault rifle at the defendants in the yard of defendant's house, some bullets almost surely would have hit either one of the houses or the car.
 {¶ 21} The manifest weight of the evidence, therefore, shows that the gunshot which killed the victim came from the direction of defendant's yard and was fired in a gang fight between the Rocklands and the Bloods. The second assignment of error is overruled.
 {¶ 22} For his third assignment of error, defendant states:
 {¶ 23} "III. Appellant Langford's conviction for having a weapon while under disability was not supported by sufficient evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution because the state failed to prove that Mr. Langford was convicted of a prior felony when the court took "judicial notice" of the appellant's prior conviction."
 {¶ 24} The defendants agreed to have the weapons under disability charge heard to the bench. After the jury returned its conviction on the murder and firearms charges, the court proceeded to rule on the weapons under disability charges. Defendant claims that the state failed to prove that he had a prior conviction, one of the elements of the offense. Persons are found to have a weapon while under a disability if they possess or use a firearm and have "been convicted of a felony of the first or second degree * * * within five years" or "been convicted of any felony offense of violence * * *." R.C. 2923.13.
 {¶ 25} Defendant's statement to the police proved the first element of the crime: possession and use of a firearm. The second element, which requires proof of the prior conviction, however, is not evident in the admissible evidence. The prosecutors claimed that during trial defendants had stipulated to the prior convictions and cites to pages 14 through 16 of the transcript. The transcript provided to this court, however, begins with volume III and does not include those pages.
 {¶ 26} If defendant did indeed stipulate to the prior conviction, then that stipulation is adequate to support the conviction. "`* * * [S]tipulations to prior convictions are widely recognized as a practice which benefits defendants by precluding the State from introducing evidence as to the details of the prior convictions.'" State v. Adams
(1988), 37 Ohio St.3d 295, 297, quoting with approval State v. Adams
1987 Ohio App. LEXIS 7657, at *2-3. A failure to stipulate, on the other hand, places the burden of proof back on the state. Absent a stipulation, the state can prove a prior conviction with a certified copy of the judgment entry of that conviction. R.C. 2945.75(B).
 {¶ 27} When defendants claimed a lack of proof of their prior convictions, the state noted, "[W]hen we started this trial, defense counsel indicated there was a stipulation as to those matters. If defense counsel now is reneging on that agreement, then I request the Court reset those two matters and I'll furnish the proper journal entries for the Court's peruse sale [sic]." Tr. at 1616.
 {¶ 28} The trial court responded to this request by stating, "[t]he Court can take judicial notice of their convictions." Tr. at 1617. This court has held previously, however, "proof of this element of the offense * * * cannot * * * be proven by judicial notice." State v.Arnold, (Jan. 24, 2002), Cuyahoga App. No. 79280. The third assignment of error is sustained and the conviction for weapon under disability is reversed.
 {¶ 29} For his fourth assignment of error, defendant states:
 {¶ 30} "IV. Mr. Langford was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 to the Ohio Constitution when evidence of gang affiliation was presented by the prosecutor over objection and provided to the appellant's jury without limiting instructions."
 {¶ 31} Frequently objecting to evidence showing that these shootings were gang related, counsel claimed that this evidence was character evidence used to show that defendant was a bad person. This court recently addressed this same issue in the appeal of one of defendant's co-defendants and ruled "that the evidence regarding the gang affiliation had been introduced to establish motive, specifically that Jones and his codefendants caused Warren's death as a result of a gang-related shooting. As such, the gang references are permitted under Evid.R. 404(B). Therefore, the court did not abuse its discretion in admitting this evidence * * *." State v. Jones, supra, at ¶ 14.
 {¶ 32} Additionally, the record does not show that defense counsel requested a limiting jury instruction concerning this evidence. Absent plain error, a defendant waives the right to appeal an error in a jury instruction if it was not brought to the trial court's attention. Statev. Barnes (2002), 94 Ohio St.3d 21, 27. Because adequate evidence exists to support defendant's conviction even without the references to gang-related activity, we find no plain error in the lack of a limiting instruction. Accordingly, assignment of error four is overruled.
 {¶ 33} For his fifth assignment of error, defendant states:
 {¶ 34} "V. Mr. Langford was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 to the Ohio Constitution when the court would not instruct the jury on the lesser included offenses of negligent or reckless homicide."
 {¶ 35} Defendant argues that the conflicting evidence required an instruction on the lesser included offenses of negligent and reckless homicide. This court addressed this issue also in Jones, supra, the appeal of defendant's co-defendant: "In State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus, the court defined a lesser included offense as follows:
 {¶ 36} "`An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.'
 {¶ 37} "In State v. Kidder (1987), 32 Ohio St.3d 279,513 N.E.2d 311, the court explained when a lesser included offense should be instructed to the jury, stating:
 {¶ 38} "`A criminal defendant is entitled to a lesser included offense instruction, however, only where the evidence warrants it. (Citations omitted.) Thus, the trial court's task is two-fold: first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater.'
 {¶ 39} "Negligent homicide is defined in R.C. 2903.05 as: "`(A) No person shall negligently cause the death of another * * * by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.'
 {¶ 40} "Reckless homicide is defined in R.C. 2903.041 as: "`(A) No person shall recklessly cause the death of another * * *.'
 {¶ 41} "In accordance with the definition set forth in Deem, negligent homicide is not a lesser included offense of murder proscribed in R.C. 2903.02(B). This is because this greater offense can be committed without the lesser offense, negligent homicide, also being committed. Accord State v. Ford (July 10, 2000) Stark App. No. 1999 CA00177, (negligent homicide is not a lesser included offense of murder as defined in R.C. 2903.02(B) because one can cause the death of another as a proximate result of committing or attempting to commit the proscribed felony by means other than by a deadly weapon or dangerous ordnance.)
 {¶ 42} "Regarding reckless homicide, we recognize it to be a lesser included offense. Here, an element of this murder statute, namely, commission of an underlying first or second degree felony, is not required to prove reckless homicide. However, we conclude an instruction on this lesser offense is nonetheless not warranted, because the jury could not have reasonably concluded that the evidence presented in this case supports a conviction for reckless homicide but not murder under R.C. 2903.02(B). See Kidder, supra. Accordingly, we overrule this assignment of error." Jones PP 85-94.
 {¶ 43} We agree with this analysis and overrule this assignment of error for the same reasons.
 {¶ 44} For his sixth assignment of error, defendant states:
 {¶ 45} "VI. Mr. Langford was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 1O, of the Ohio Constitution when his counsel failed to object to jury instructions, failed to suppress Mr. Langford's oral statement and failed to move for severance."
 {¶ 46} Defendant argues that his counsel's performance was deficient because counsel failed to object to the jury instructions, to move to suppress defendant's self-incriminating statement to the police, and to move for severance of his trial from those of his co-defendants.
 {¶ 47} In order to show ineffective assistance of counsel, a defendant must prove that not only did counsel's performance fall below an acceptable standard, but also that but for this deficient performance, the outcome of his trial would have been different.Strickland v. Washington (1984), 466 U.S. 668, State v. Bradley (1989),42 Ohio St.3d 391. Defendant claims he was prejudiced by the joint trial because without it, the statements of his co-defendants would not have been admissible as evidence against him. He also argues that the court should have given the jury a limiting instruction for them not to consider his co-defendants' statements as evidence of his guilt. He further alleges that his statement was improperly obtained, making it the fruit of a poisoned tree, because he was questioned as a result of an anonymous tip.
 {¶ 48} Defendant's co-defendants raised most of these issues in their appeals, and this court found them to be without merit. InState v. Norman, 2002 Ohio 6043, this court, quoting Strickland, said:
 {¶ 49} "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac (1982), 456 U.S. 107, 133, 134,71 L.Ed.2d 783, 102 S.Ct. 1558. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' 466 U.S. at 689. See, also, State v. Frazier (1991),61 Ohio St.3d 247, 253, 574 N.E.2d 483. In addition, absent demonstration of prejudice, this court must indulge in a strong presumption that the failure to object at trial constitutes sound strategy: Strickland supra;State v. Moore (1994), 97 Ohio App.3d 137, 646 N.E.2d 470. See, also,State v. Catlin (1990), 56 Ohio App.3d 75, 564 N.E.2d 750. Within this assignment of error, the defendant first contends that his trial counsel was ineffective for failing to move to sever his trial from that of other defendants. We reject the defendant's contention. We find that it is reasonable trial strategy of defense counsel to try co-defendants together. Accord State v. Van Horn (Mar. 25, 1993), Cuyahoga App. No. 61981. Trial counsel may have reasonably believed that trying the defendants together would work to his client's advantage. Accord Statev. Bewsey (June 16, 1993), Summit App. No. 15857. In this case, defendant's trial counsel may have believed that the evidence was such that the jury would believe his co-defendants were entirely responsible for the murder of the victim, and that the jury would, as a result, convict only his co-defendants. We therefore, cannot find that this tactical decision not to seek separate trials constituted ineffective assistance of counsel." Norman, supra, P 50.
 {¶ 50} Similarly in the case at bar, defendant's counsel may have believed that because the two guns used by co-defendants were retrieved and were .22 caliber, just as those co-defendants described, the jury would believe that defendant's statement that he used a .380 would be more credible. Without those corroborating statements, defendant may have looked as if he simply lied about the type of gun used after he heard on the news that the fatal bullet was a 7.62. With the corroborating statements, the jury may have believed that he acted alone. See alsoJones, supra, at ¶ 107.
 {¶ 51} Defendant also claimed that counsel should have moved the court to suppress his statement. Addressing this issue, this court inJones said:
 {¶ 52} "Even where a motion to suppress is supported by some evidence in the record, we presume that defense counsel was effective if the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act. State v. Edwards (July 11, 1996), Cuyahoga App. No. 69077, citing State v. Martin (1983),20 Ohio App.3d 172, 20 Ohio B. 215, 485 N.E.2d 717.
 {¶ 53} "Here, Detective Kovach's testimony indicates that the police first became aware of the names of the three defendants through a Crime Stopper tip and an anonymous tip the day after the killing. Detective Kovach stated that the police then communicated with individuals acquainted with these men indicating an intent to interview them. She further testified that on August 20, 2001, the POPE unit of the police department picked up these three individuals and brought them to the police station, where they each gave a statement describing the incident. Although she could not recall whether they were handcuffed when they arrived, she testified that the police booked them at the police station only after they gave a statement describing their participation in the incident. Thus the record shows that Jones' arrest was based on information he himself provided to the police, not based on an anonymous tip. As evidence on the record does not justify the filing of a motion to suppress, Jones has not met his burden to prove that his attorney violated an essential duty by failing to file a motion to suppress."Jones at PP 108-109.
 {¶ 54} The defendant in the case at bar gave his statement under the same circumstances as Jones did. We agree with the court's analysis and adopt its reasoning here.
 {¶ 55} Defendant's final argument concerning his counsel's performance is his claim that counsel should have requested a limiting instruction, telling the jury not to consider his co-defendant's statements as proof of his guilt. As noted above, however, his co-defendant's statements could be viewed as helping rather than hurting defendant's case. Counsel may have chosen not to request a limiting instruction as a tactical decision. An appellate court will not second guess trial counsel's tactical decisions. Strickland, supra.
 {¶ 56} Counsel's representation of defendant was far from deficient and did not prejudice defendant. In fact, when reading the transcript of defendant's trial, this court was impressed by counsel's diligence and thoroughness. The sixth assignment of error is overruled.
 {¶ 57} Defendant's last three assignments of error, which address sentencing, will be discussed together. For his seventh, eighth, and ninth assignments of error, defendant states:
 {¶ 58} "VII. The trial court erred when it imposed more than the minumum terms of imprisonment on Mr. Langford, without making the necessary findings required by R.C. 2929.14(B).
 {¶ 59} "VIII. The trial court erred in imposing the maximum sentence pursuant to R.C. 2929.14(C) where it did not find or set forth factors supporting that the appellant committed the worst form of the offense or that the appellant posed the greatest likelihood of committing future crimes.
 {¶ 60} "IX. The trial court erred by ordering consecutive sentences when it failed to make any of the necessary findings or reasons for the findings required by R.C. 2929.14(E)(4)."
 {¶ 61} Defendant argues that the trial court failed to make any of the required statutory findings when it sentenced defendant to the maximum on the weapons under disability charge. Because we vacated the conviction for the disability charge, this issue is moot.
 {¶ 62} Defendant also points to the same deficiency in the consecutive nature of the sentences. The court did not have any discretion, however, regarding the remainder of defendant's sentence because it was determined by statute. Under R.C. 2903.02(B) the murder conviction required a sentence of fifteen years to life. The firearms specification required three years, pursuant to R.C. 2929.14(D)()1)(a)(ii), and was statutorily mandated by R.C. 2929.14(E)(1)(a) to run consecutively to the murder sentence. This assignment of error, therefore, is overruled.
 {¶ 63} The judgment is affirmed in part; the conviction for weapon under a disability is vacated.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J. and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] See State v. Jones, Cuyahoga App. No. 80737, 2002-Ohio-6045; Statev. Norman, Cuyahoga App. No. 80702, 2002-Ohio-6043.