CITY OF CLEVELAND, Appellee,

v.

FOGOS, Appellant.*

[Cite as *Cleveland v. Fogos* (1995), 103 Ohio App.3d 39.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67266.

Decided April 3, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 73 Ohio St.3d 1449, 654 N.E.2d 985.

**40**

*Russell R. Brown III*, Assistant Director of Law, for appellee.
*John J. Duffy & Associates* and *John J. Duffy*, for appellant.

HARPER, Presiding Judge.

Appellant, Michael Fogos, appeals from his convictions by the Cleveland Municipal Court for violations of Cleveland Codified Ordinances by using a vacant lot as a parking lot and failing to screen and drain the property. For the reasons that follow, we affirm.

## I.

The record shows that appellant is the titled owner of the property located at 3204–3206 Clark Avenue in Cleveland, Ohio. On or about August 19, 1992, appellant received a notice of violation of Cleveland Codified Ordinances

349.07(a), improper change of the use of a vacant lot to a parking lot by not providing proper surfacing, grading and drainage, and Cleveland Codified Ordinances 349.08, failure to properly screen the lot. Appellant was subsequently prosecuted on those charges on February 22, 1993.

On March 16, 1993, after the city presented its case and without testimony from appellant, the court found appellant not guilty on those charges because the city failed to prove that the vacant lot was used as a parking lot.

On September 14, 1993 appellant was again issued a notice for violating Cleveland Codified Ordinances 349.07(a) and 349.08. Appellant was given a compliance date of October 14, 1993. A compliance letter was sent to appellant on December 12, 1993. On March 30, 1994 appellant was sent a notice of prosecution after he failed to comply with the notices.

On April 26, 1994 the case was tried to the bench. The city of Cleveland presented evidence that the vacant lot was being used as a parking lot and that appellant had failed to comply with zoning requirements for a proper conversion.

Appellant on direct examination testified that since his ownership of the lot in 1981 it had been used as a parking lot. On cross-examination, appellant admitted that when he received the complaint he petitioned the board of zoning appeals for a variance. Appellant's application was denied. Appellant also admitted receiving notice from the city inspector informing him that the property needed to be drained, screened and paved. According to appellant the property was not paved or screened, and no draining facility was put in place.

At the conclusion of all evidence, the court denied appellant's motion for acquittal based on double jeopardy. Appellant was convicted as charged.

## II

Appellant assigns the following error for our review:

"The trial court erred in allowing a second trial to proceed subsequent to a prior acquittal.

"1. The double jeopardy clauses of the United States and Ohio Constitutions prohibit a second trial on the same alleged offenses subsequent to an acquittal in a former trial.

"2. The doctrine of collateral estoppel, as embodied in the doctrine of jeopardy, bars the relitigation of the same factual issues already litigated between the same parties in a previous trial."

Appellant in his sole assignment of error challenges his convictions, claiming that the second prosecution for the same offenses he had been acquitted on in the

first prosecution was a violation of his constitutional right because he was being twice put in jeopardy for the same offenses.

The law of double jeopardy is not a new legal principle in the United States. The general principle of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution was well formulated by the United States Supreme Court in *Green v. United States* (1957), 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204, as follows:

"The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense * * *.

"The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

Thus the Double Jeopardy Clauses of the United States and Ohio Constitutions protect the accused against a second prosecution for the same offense after acquittal. It also protects the accused against a second prosecution for the same offense after conviction. And it prohibits multiple punishments for the same offense. *Brown v. Ohio* (1977), 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194; see, also, *N. Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–665. As stated by the United States Supreme Court in *Ohio v. Johnson* (1984), 467 U.S. 493, 498–499, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425, 433:

"[T]he bar to retrial following acquittal or conviction ensures that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety, and expense, while increasing the risk of an erroneous conviction or an impermissibly enhanced sentence."

In *Shearman v. Van Camp* (1992), 64 Ohio St.3d 468, 469, 597 N.E.2d 90, 92, the Ohio Supreme Court stated:

"The Double Jeopardy Clauses contained in the Ohio and the United States Constitutions protect an accused from multiple punishments for the same offense. *State v. Thomas* (1980), 61 Ohio St.2d 254, 258–260, 15 O.O.3d 262, 265, 400 N.E.2d 897, 902. We stated the requirements for a plea of former jeopardy in *State v. Best* (1975), 42 Ohio St.2d 530, 71 O.O.2d 517, 330 N.E.2d 421, paragraph two of the syllabus:

" 'To sustain a plea of former jeopardy, it must appear:

" '(1) That there was a former prosecution in the same state for the same offense;

" '(2) that the same person was in jeopardy on the first prosecution;

" '(3) that the parties are identical in the two prosecutions; and

" '(4) that the particular offense, on the prosecution of which the jeopardy attached, was such an offense as to constitute a bar.' "

In the instant case, while three of the four tests of *Shearman* and *Thomas* have been met, the fourth test remains an issue. Do the offenses for which appellant was prosecuted the first time constitute a bar to the second prosecution? We have to say that because of the nature of the offenses and the purpose for which the ordinances were enacted the answer must be in the negative.

We begin with the purpose for which the ordinances were enacted. Cleveland Codified Ordinances 327.01(a) states as follows:

"Interpretation and Purpose

"(1) In interpreting and applying the provisions of this Zoning Code, they shall be held to be the minimum requirements adopted for the promotion of public health, safety, morals and general welfare."

Because the ordinances were enacted to promote health, safety, morals and general welfare of the public, their enforcement must be *continuous* to effectuate their purpose. By this we mean that one who is innocent of their violation today may find himself violating them tomorrow because endangering public health, safety, morals and general welfare does not require much effort.

Appellant was prosecuted for violating the following ordinances found in Cleveland Codified Ordinances Chapter 349:

"349.07 Access and Maintenance of Off–Street Parking Spaces

"(a) Accessory off-street parking spaces, driveways and maneuvering areas shall be properly graded for drainage so that all water is drained within the lot providing such parking spaces, surfaced with concrete, asphaltic concrete, asphalt or similar surfacing material, maintained in good condition and free of debris and trash."

"349.08 Screening of Off–Street Parking Spaces

"Where five or more accessory off-street parking spaces are provided, and are located on a lot that is adjacent to a Residence District or that adjoins a building containing dwelling units, such parking spaces shall be screened from all adjoining lots in the Residence District or a building containing dwelling units, by an opaque wall, a uniformly painted fence of fire-resistant material or a strip of land

at least four feet wide and densely planted with shrubs that form a dense screen year-round. Such wall, fence or shrubs shall be at least three feet, but not more than six feet six inches in height. However, such wall, fence or shrubs located within twenty-five feet of the intersection of two or more streets or the intersection of an access driveway and a street, shall have a maximum height of three feet and a minimum height of two feet.

"The required screening shall be maintained in good condition at all times.

"No signs shall be permitted to be attached to or hung from the required screening."

"327.99 Penalty

"(a) Except as provided in sections (c) and (d) below, any person, firm or corporation who violates any of the provisions of this Zoning Code or who fails to comply therewith shall, for each and every violation or failure, be fined not less than one hundred dollars ($100.00), nor more than five hundred dollars ($500.00) or imprisoned for not less than ten days, nor more than ninety days, or both. A separate offense shall be deemed committed each day during or on which such violation or failure to comply is permitted to exist after notification thereof.

"(b) *The imposition of any penalty under this section shall not be construed as excusing or permitting the continuance of any violation, and when the violation constitutes a nuisance, any owner of the premises, whether the owner at the time the violation was committed or his assignee, shall be deemed guilty of a violation of this Zoning Code each day he permits such nuisance to continue unabated after due notice from the Commissioner of Building or the Commissioner of Housing of the existence of such nuisance.*

"(c) Any person, firm, or corporation who violates any provision of Section 337.16 of this Zoning Code or who fails to comply therewith shall, for each and every violation or failure, be fined not less than two hundred fifty dollars ($250.00), nor more than five hundred dollars ($500.00) which fine shall not be reduced, waived or suspended. In addition, imprisonment for not less than ten days nor more than ninety days may be imposed. *A separate offense shall be deemed committed each day during or on which such violation or failure to comply is permitted to exist after notification thereof.*" (Emphasis added.)

In appellant's first trial, the following cross-examination of a witness for the city took place:

"BY MR. DUFFY:

"Q. Inspector Graves, when was the property converted from a dwelling unit to a parking lot?

"A. I don't know the exact date. I have the original maps that's how I know this house was torn down.

"Q. You don't know when that was converted?

"A. That's correct.

"Q. Do you know of any change of use of the tavern or restaurant?

"A. That's a separate parcel. I do not know of the change of use.

"MR. DUFFY: Nothing further, Your Honor.

"THE COURT: Okay. Thank you.

"MR. ROBERTS: The city rests, Your Honor.

"THE COURT: Mr. Duffy.

"MR. DUFFY. The defendant does not choose to put on any evidence at this time, Your Honor.

"THE COURT: The city rests and the defendant rests. Any closing argument?

"MR. ROBERTS: Your Honor, the complaint is not just for an illegal conversion, but failure to keep the parking lot in good repair. And, so we feel we prove [sic] the case and that the defendant needs to drain and paved [sic] the lot, if he wants to continue to use it as a parking lot.

"THE COURT: Mr. Duffy?

"MR. DUFFY: Your honor, the city has failed to meet its burden of proof. No evidence has been introduced that would prove the lot is being used as a parking lot. The inspector did not testify he observed any parking on the lot. His only statement is that it is a parking lot. Secondly, there has been no evidence or has been introduced to the affect [sic] that it has been changed to a lot, if there was such a change that occurred after 1971, the year that the ordinance was passed under which the defendant has been charged and that is Section 349 of the Revised Code [sic]. Of [sic] the Inspector's testimony that he did not have knowledge of any use of that change or use of the building at the property, which would require compliance with Section 349 of the City's ordinance; therefore, Your Honor, we contend that the city has no proof that there was a failure to obtain a permit because they haven't proven whether a conversion was made. They have not proven that the property falls within the purview of Chapter 349 and have not proven there is actually any parking going on that lot. This is a criminal case. The city has, as you know, the obligation of proving its case beyond a reasonable doubt which has to exist in the mind of the Court, if there has been a violation.

"THE COURT: Finding of not guilty.

"MR. DUFFY: Thank you, Your Honor."

So appellant was found not guilty of using the vacant lot as a parking lot because the city did not provide any evidence.[1]

On August 23, 1993 another inspection was conducted of the property and the inspector found that appellant was in continuous violation of the same ordinances he was originally cited for violating in 1992.

Appellant is not arguing that the city had no authority to conduct a second inspection of the property. Thus the second inspection, which was within the city's police powers to conduct, is separate and distinct from the inspection that led to appellant's acquittal in the first trial. Appellant was being charged with a violation of an order to comply with the zoning laws that occurred after his first acquittal. See *Dayton v. Partridge* (June 8, 1989), Montgomery App. No. 11300, unreported, 1989 WL 65250.

In appellant's second trial, the following colloquy took place:

"MR. DUFFY:

"Q. Mr. Fogos, when did you become the owner of the property?

"A. 1981 or 1982.

"Q. To your knowledge, during this period of time has this property always been used as a parking lot?

"A. Yes.

"MR. DUFFY: Nothing further, Your Honor. Thank you.

"THE COURT: Mr. Brown.

"CROSS EXAMINATION

"BY MR. BROWN:

"Q. Mr. Fogos, when did you initially receive this complaint. Did you petition to the Board of Zoning Appeals for a variance?

"A. Yes.

"Q. And, was it denied?

"A. Yes, but there was only two people on the Board. Instead of having the 4 or 5 that you need.

"Q. So, at the time, it was denied, you understood you could not get a variance for this parking lot. *It needed to be drained, paved, and screened?*

---

1. This trial was based on the notice of violation of the August 1992 inspection.

"A. No.

"Q. *Did you receive a notice from the inspector that this property needs to be drained, screened, and paved?*

"A. Yes.

"Q. And, did you said, [sic] your appeal to the Board of Zoning Appeals was denied?

"A. Well, it was always like that, the gravel. I could not understand why I have to pave, if the previous people didn't have to themselves.

"Q. Did you ask that question of the Board of Zoning Appeals?

"A. No, I—they didn't give me a chance to.

"Q. *And, the parking lot is in the same condition today; that is, graveled and not paved?*

"A. Yes.

"Q. *Okay. And, you have not screened the parking lot or put in any draining facilities?*

"A. No.

"MR. BROWN: No further questions.

"MR. DUFFY: No further redirect." (Emphasis added.)

 Appellant admitted violating the zoning code but argues that he cannot be charged the second time because there are "no new factual issues to resolve." We disagree because the nature of the zoning code laws create a unique situation that may cause an overlap in facts and evidence during prosecution. The enforcement of zoning codes has a certain urgency because of the danger that can result when enforcement is ignored. Therefore, the city's right to protect the safety and health of its citizens should not be hampered by a creative legal fiat that might endanger the lives of the populace. The Double Jeopardy Clause does not create an implied immunity for a continuous violation, as such a reading would hamper the enforcement of the likes of the housing code.

The zoning code is not a criminal ordinance whose purpose is to punish whenever a violation occurs, but, rather, it is an enforcement ordinance intended to compel compliance with certain fundamentals of zoning standards expected of a civilized society. Its proper enforcement cannot be defeated by a claim of double jeopardy.

We are, however, not unaware of the potential for abuse by the code enforcers, but like any other legislative power whenever it is used for other than its

intended purpose, like harassing or coercing citizens, all bets are off and justice should take its course.

We hold that a conviction or acquittal of a zoning code violation does not win the accused a right to create a perpetual nuisance by virtue of prior conviction or acquittal, as the prior offense does not necessarily constitute a bar to a subsequent prosecution.

*Judgment affirmed.*

NUGENT and O'DONNELL, JJ., concur.