JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Anthony Whitmore, appeals the housing court's finding of continuing violations on a condemned property he manages for Cuyahoga Lorain Corporation. He is the sole member of the corporation.
 {¶ 2} This case is defendant's second appeal concerning this property. In the previous filing, the housing court cited the corporation for the same violations. The facts of the case, as stated by this court in the previous appeal, follow:
"On April 6, 1999, the City of Cleveland Building Inspector Dwayne Ford inspected the property located at 10131 Elk Avenue. Shortly thereafter on April 14, 1999, Ford issued a condemnation notice for the property to then owners Solomon and Beatrice Chisholm, allowing them until May 14, 1999 to repair the code violations. The Chisholms did not comply with the order and the City of Cleveland issued misdemeanor charges against them. The Chisholms entered a plea of no contest and were ordered to pay a $1,000 fine. It is undisputed that in May of 2000, Cuyahoga [corporation] acquired the property from the Chisholms. On October 26, 2001, the City of Cleveland issued a complaint against Cuyahoga for failure to comply with the order of the Commissioner of Building and Housing, a misdemeanor of the first degree * * *. The trial court * * * proceeded to trial on the [following] counts, to wit: (i) Cuyahoga's failure to comply with the order of the Commissioner of Building and Housing pursuant to Cleveland Codified Ordinance ("CCO") Section 3103.25(e) with regard to the appurtenant structure/garage on the property and (ii) Cuyahoga's failure to maintain the main structure in compliance with CCO 3101.10. A jury trial commenced on February 20, 2003. The trial court declared a mistrial on February 24, 2003, due to defense counsel's continuing unavailability. After a new trial commenced, Cuyahoga was found guilty of violating CCO 3101.10, but not guilty of violating CCO 3103.25(e). Cuyahoga was thereafter sentenced to pay a fine of $75,000 and costs."
City of Cleveland v. Cuyahoga Lorain Corp., Cuyahoga App. No. 82823,2004-Ohio-2563 ¶ 2. This court affirmed the conviction but reversed and remanded for modification of the fine.
 {¶ 3} In January of 2003, while the case against the corporation was still on appeal, the city again filed a complaint concerning the property. The city ordinance allows the city to take action against both the owner of a property and the person responsible for managing the property or either one. The complaint which is the subject of the case at bar was filed against Whitmore personally. It is the appeal of this case which is before us now.
 {¶ 4} At the trial of October 16, 2003, the jury found Whitmore guilty of violating the city ordinances by failing to bring the building and the garage up to code. Whitmore timely appealed, stating five assignments of error. The first is:
"I. THAT THE TRIAL COURT ERRED IN PROCEEDING AGAINST DEFENDANT-APPELLANT, ANTHONY WHITMORE, IN THE CASE OF CITY OF CLEVELANDVS. ANTHONY WHITMORE (supra) ON THE IDENTICAL INDICTMENT, FACTS, AND CIRCUMSTANCES UPON WHICH THE PRIOR DEFENDANT, CUYAHOGA LORAIN CORPORATION, HAD BEEN FOUND NOT GUILTY. THE FACTS AND CIRCUMSTANCES PROHIBIT ANY CONVICTION AGAINST DEFENDANT-APPELLANT, ANTHONY WHITMORE, FOR THOSE CHARGES IDENTICALLY ADDRESSED AGAINST THE DEFENDANT, CUYAHOGA LORAIN CORPORATION, IN THE CASE OF CITY OF CLEVELAND VS. CUYAHOGA LORAINCORPORATION, CASE NO. 2001-CRB-53900, IN WHICH DEFENDANT WAS FOUND NOT GUILTY."
 {¶ 5} Whitmore argues that because Cuyahoga Lorain Corp. had already been tried on these offenses, double jeopardy barred a retrial against him.
 {¶ 6} In the case at bar, the cited violations are the same violations for which the Chisolms were fined in 1999. This court found in CuyahogaLorain, supra, that
"Whitmore testified that in June of 2000, just after taking ownership of the property, he appeared in court in reference to the pending misdemeanor charges against the previous owners. He testified that he agreed, as the new owner, to solve the code problems with the city. The inspector testified that condemnation notice became a matter of public record which Cuyahoga [the corporation] would have learned of in the process of purchasing the property from the Chisholms. He further testified that upon learning that Cuyahoga was the new owner, he sent a copy of the condemnation notice by certified mail to Cuyahoga. Lastly, the fact that Whitmore testified to having made the appropriate repairs to the property belies the assertion that Cuyahoga did not have notice of the condemnation order or of the specific repairs that needed to be made."
Id. ¶ 17.
 {¶ 7} The inspector reinspected the property on December 4th and 5th 2002 and found numerous violations which dated back to 1999. He filed a complaint in housing court on January 9, 2003 alleging that from August 22, 2002 through December 5, 2002 the same violations continued on the property. After several continuances, the trial was held on October 16, 2003.
 {¶ 8} Double jeopardy bars the government from trying a defendant for the same crime twice. Even if we were to assume, however, that the prosecution against Whitmore in this case involved the same defendant as in the case against the corporation, the dates noted in the citation against Whitmore concern dates different from the dates in the citation against the corporation. As the Eleventh Appellate District noted in a similar case,
"certain zoning violations must not be permitted to continue simply because the offender was previously held accountable but failed to correct subsequent violations identical in nature. More importantly, in the present situation, the notice violation provided that the charged offense would continue each and every day thereafter until corrected. In this situation, the rules of double jeopardy do not attach to appellant's flagrant actions, because each day that the violation was not corrected a new offense occurred."
City of Girard v. Rodomsky (Dec. 31, 1998), Trumbull App. No. 97-T-0107, 1998 Ohio App. LEXIS 6359, at *12-13. So too in the case at bar, although the violations were first cited in April of 1999, each day the violations continue constitutes another offense for noncompliance.
 {¶ 9} This court previously addressed the question of double jeopardy in a building code violation case in Cleveland v. Fogos (1995),103 Ohio App.3d 39, 47. We held that "[t]he Double Jeopardy Clause does not create an implied immunity for a continuous violation, as such a reading would hamper the enforcement of the likes of the housing code." As the Fogos court explained, the purpose of the building codes is to "to compel compliance with certain fundamentals of zoning standards expected of a civilized society. Its proper enforcement cannot be defeated by a claim of double jeopardy." Id.
 {¶ 10} Further, we note that the dates of noncompliance for which Whitmore was cited postdated the conviction of the corporation. Even if both indictments had been against Whitmore personally, prosecuting each of them would not be barred by double jeopardy. As in Girard, supra, "the rules of double jeopardy do not attach to appellant's flagrant actions, because each day that the violation was not corrected a new offense occurred." Girard v. Rodomsky (Dec. 31, 1998), Trumbull App. No. 97-T-0107, 1998 Ohio App. LEXIS 6359, at *12-13.
 {¶ 11} Similarly, the city in the case at bar cited Whitmore for continuing violations. Although the violations and subsequent condemnation began on May 19, 1999, both the complaint and jury instructions are clear that Whitmore was being cited only for the violations that occurred from August 8, 2002 to December 5, 2002. It is clear, therefore, that "a conviction or acquittal of a zoning code violation does not win the accused a right to create a perpetual nuisance by virtue of prior conviction or acquittal, as the prior offense does not necessarily constitute a bar to a subsequent prosecution." Fogos at 48.
 {¶ 12} Accordingly, the trial court did not violate the doctrine of double jeopardy. This assignment of error is overruled.
 {¶ 13} For his second assignment of error, Whitmore states:
"II. THAT THE TRIAL COURT ERRED IN MAKING A DETERMINATION BY THE COURT WITHOUT PRESENTING THE CHARGES TO THE JURY WHEN A JURY DEMAND WAS PENDING. THE TRIAL COURT DID NOT MAKE AN ANNOUNCEMENT THAT THE LACK OF OBTAINING A PERMIT CHARGES WOULD BE HEARD BY THE JUDGE AND NOT THE JURY AND THE COURT DID NOT RECEIVE ANY CONSENT OF THE DEFENDANTS OR WAIVER CONTAINED IN THE RECORD ON THIS ISSUE."
 {¶ 14} In addition to the first degree misdemeanor charges against Whitmore for the code violations, he was also charged with a minor misdemeanor for failing to obtain a permit for work he had done. He argues now that the trial court erred when it did not allow that portion of the trial to go to the jury.
 {¶ 15} The right to a jury trial is controlled by R.C. 2945.17, which states in pertinent part:
"(B) The right to be tried by a jury that is granted under division (A) of this section does not apply to a violation of a statute or ordinance that is any of the following:
(1) A violation that is a minor misdemeanor * * *." R.C. 2945.17(B).
 {¶ 16} Whitmore claims, however, that because the rest of the charges against him entitled him to a jury, the court erred by not presenting this charge to the jury. He does not, however, cite any law to support his claim. Appellate Rule 16(A)(7) requires an appellant to include "citations to authorities, statutes, and the parts of the record on which appellant relies."
 {¶ 17} Nonetheless, we find his claimed error to be without merit. "It is the potential penalty associated with a particular charge which triggers the right to jury trial under R.C. 2945.17, and not the particular procedural aspects of the case." Columbus v. Skaggs (Oct. 17, 1985), Franklin App. No. 84AP-485, 1985 Ohio App. LEXIS 8911, at *5. The consolidation of a minor misdemeanor case with a case which has the right to a jury trial does not confer a jury trial right to the minor misdemeanor charge. "The General Assembly has made the right to jury trial dependent upon the potential penalty associated with a charge, and not dependent upon the procedural combination of charges in one case." Id. at *7. Therefore, "[i]t is the potential penalty associated with a particular charge which triggers the right to jury trial under R.C. 2945.17, and not the particular procedural aspects of the case. Id. at *5.
 {¶ 18} The trial court did not err in trying the minor misdemeanor to the bench and not to the jury. Accordingly, this assignment of error is overruled.
 {¶ 19} For his third assignment of error, Whitmore states:
"III. THAT THE TRIAL COURT ERRED BY FINDING THE DEFENDANT GUILTY OF CHARGES IN VIOLATION OF THE COURT AND THE CITY OF CLEVELAND'S RULES AND/OR CODIFIED ORDINANCES."
 {¶ 20} Under this assignment of error, defendant appears to claim that the citation and violation notice[1] he received were not specific enough to give him proper notice of what constituted the violations he was charged with. He cites the Ohio Basic Building Code to support his argument. He was charged under the Cleveland City Ordinances, however, not under the state statute. Additionally, the building code violations attached to his citations were the very ones presented to the Chisolms, the previous owners, in 1999. Whitmore assured the court in 2000 that he, as the new owner of the building, intended to repair all the listed violations. He did not, at that hearing or in the subsequent case against the corporation, ever claim that the wording of the notice of violation was too vague for him to understand what repairs were needed. "Appellant cannot now be heard to complain about this when [appellant] could have brought this to the attention of the court at a time when the court could have considered the issue." Slone v. Slone (1992), Wayne App. No. 2717, 1992 Ohio App. LEXIS 4526 at *2. He has therefore waived any complaint concerning the alleged imprecision in the violation notice.
 {¶ 21} Further, a review of the transcript of the hearing against the corporation, which hearing Whitmore attended and at which Whitmore testified extensively, demonstrates that the inspector had repeatedly gone through the building with Whitmore and pointed out the specific problems to him and that Whitmore clearly understood the problems he had to correct. He cannot now claim that the notice of the violations was too general for him to be able to repair the problems.
 {¶ 22} The citation and violation notice were not insufficient under the Cleveland City Ordinances, and if they had been, any objection to them was waived in the prior case against the corporation. Accordingly, this assignment of error is overruled.
 {¶ 23} For his fourth assignment of error, defendant states:
"IV. THAT THE CONVICTION OF THE DEFENDANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 24} Defendant claims that his conviction was against the manifest weight of the evidence. The standard of review for a manifest weight argument was clearly defined by the First Appellate District:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 25} Rather than address the actual evidence presented at trial, defendant argues under this assignment that he could not comply with the violation notice because it listed the compliance date as May 14, 1999. He claims impossibility in performance because he could not meet a deadline which had already passed. This argument is disingenuous. At the trial against the corporation, which Whitmore defended on behalf of the corporation, defense counsel raised this same argument. In the prior trial as well as in this one, the inspector and the building commissioner both explained that the city writes only one condemnation notice for a property, regardless of how many owners the property has at the time or after the condemnation order is made. A copy of this one and only condemnation notice is attached to each subsequent citation when the violations listed on the condemnation notice continue to exist. Whitmore was aware of this procedure, and, indeed, performed work on the property in an attempt to comply with the city ordinances well after the 1999 date. It is clear both from the previous case, as well as from his testimony in this case, that Whitmore understood that the violations were ongoing and that the compliance date, which had already passed, was the first deadline to cure the violations. He clearly understood, as was shown in the prior appeal, that he would still be required to rectify the violations after he took possession of the building, which event occurred after the date on the condemnation notice. As we discussed in the third assignment of error, the violations were ongoing.
 {¶ 26} Whitmore also appears to be arguing that the City prevented him from completing repairs by denying him a general permit. In his brief Whitmore states: "the City's refusal to issue the General Permit is the essential crutch so [sic] his impossibility to perform." Brief p. 12. This statement misrepresents the facts. The City did not refuse this permit. On the contrary, it issued a general building permit on October 11, 2001.
 {¶ 27} Whitmore also appears to be arguing that because he was denied an electrical permit he could not proceed with the repairs.[2] First, the reason he was denied the electrical permit was that his plans did not provide for the new improvements needed to upgrade the property as a result of his changing its use. His refusal to accommodate the new standards puts the blame squarely on him, not the City.
 {¶ 28} Second, a denial of one permit does not explain Whitmore's failure to perform on repairs for which he had valid permits. For example, Whitmore received a permit in March of 2001 to demolish the "entire metal garage." Rather than perform the work listed on the permit, he instead took down some of the walls of the garage but left the roof and portions of the walls intact by adding support to the beams to prevent the decking from caving in. On June 12, 2001, the city issued a permit to repair the roof on the east main building. This permit was issued almost a year after Whitmore had appeared in court and promised, as the new owner, to repair the property. The repair on the roof, however, was never completed even though Whitmore had both the general and special roof permit.
 {¶ 29} Finally, Whitmore claims that he never had proper notice of what the specific violations were. The fact that he appeared in court and defended the corporation against charges of the same violations renders this claim meritless.
 {¶ 30} Because his entire argument rests upon an alleged lack of notice and impossibility of performance for the 1999 repair date, claims clearly unsupported by the evidence, Whitmore has failed to demonstrate that the manifest weight of the evidence is against his conviction. In fact, he has failed to point to any evidence in the trial transcript to support his claim that the weight of the evidence is against his conviction. The Appellate Rules require an appellant to cite to the record in support of his argument. "The appellant shall include in its brief, * * * [a] statement of facts relevant to the assignments of error presented for review, with appropriate references to the record * * *." App.R. 16(A)(6).
 {¶ 31} Whitmore's conviction was not against the manifest weight of the evidence. Accordingly, this assignment of error is overruled.
 {¶ 32} For his fifth assignment of error, Whitmore states:
"V. THAT THE DEFENDANT-APPELLANT WAS DEPRIVED HIS [sic] CONSTITUTIONAL RIGHT TO COMPETENT COUNSEL, AS THE ACTIONS OF HIS TRIAL ATTORNEY, JAMES MAJOR, DEPARTED FROM THE STANDARD REQUIRED, SO AS TO RADICALLY AFFECT HIS ABILITY TO OBTIAN [sic] A FAIR TRIAL AND HIS RIGHT TO COMPETENT COUNSEL AS GUARANTEED BY THE CONSTITUTION OF THE STATE OF OHIO AND THE UNITED STATES CONSTITUTION."
 {¶ 33} Whitmore claims his trial attorney was incompetent and that he was, therefore, deprived of his constitutional right to counsel. He cites to counsel's failure to file discovery, a bill of particulars, jury instructions, a response to the state's motion in limine, and statement of exhibits. He also points to counsel's failure to move for a Criminal Rule 29 acquittal at the close of the state's case.
 {¶ 34} For a reviewing court to find ineffective assistance of counsel, it must find, first, that counsel's representation fell below the accepted standard, and, second, that but for that deficiency, the outcome would have been different. "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty * * *." State v. Xie (1992), 62 Ohio St.3d 521, 524, quoting State v. Hill, 474 U.S. at 59.
 {¶ 35} In order to demonstrate ineffective counsel, defendant must show not only that his counsel's representation fell below the standard of that of competent attorneys, but also that, but for that substandard representation, the outcome of his trial would have been different.Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 36} In State v. Norman, 2002 Ohio 6043, this court, quotingStrickland, said:
"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac (1982), 456 U.S. 107, 133, 134,71 L.Ed.2d 783, 102 S.Ct. 1558. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689. See, also, State v. Frazier (1991),61 Ohio St.3d 247, 253, 574 N.E.2d 483. In addition, absent demonstrationof prejudice, this court must indulge in a strong presumption that the failure to object at trial constitutes sound strategy: Strickland supra;State v. Moore (1994), 97 Ohio App.3d 137, 646 N.E.2d 470. See, also,State v. Catlin (1990), 56 Ohio App.3d 75, 564 N.E.2d 750. (Emphasis added.)"
Id. ¶ 50.
 {¶ 37} In the case at bar, although appellate counsel alleges a number of deficiencies in trial counsel's performance, including failure to pursue discovery or participate in pretrial procedures such as filing jury instructions with the court, he fails to demonstrate any prejudice resulting from these alleged deficiencies. Because he has not shown that the outcome of the trial would have been different but for these alleged deficiencies, Whitmore cannot claim ineffective assistance of counsel. Accordingly, this assignment of error is overruled.
Affirm.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., and Corrigan, J., concur.
[1] The violation notice is the original notice of the deficiencies on the property. This notice was given to the Chisolms in 1999. The citation is the current notice to defendant that the violations continue and that he is being held liable for those ongoing violations.
[2] In his brief Whitmore states: "Clearly, the issue of the Inspector saying [sic] was a permit needed, was a permit [sic] not needed adds to the confusion and thereby the IMPOSSIBILITY OF PERFORMANCE." (Emphasis sic.)